[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 685 
Rape; sentence: forty years.
The appellant was convicted of the rape of a thirteen-year-old girl. The alleged rape occurred at approximately 10:30 P.M. on June 22, 1974. In addition to the prosecutrix, Randy Wilson, age fifteen, and Kimberly Ann Lowe, age fourteen, were present when the incident occurred.
The evidence at trial established that a black male entered the prosecutrix's home on the night in question by the use of threats of force, including the brandishing of a long kitchen knife. The assailant forced the prosecutrix and her companions to accompany him into a bedroom.
While in the bedroom, the prosecutrix was forced to disrobe. The assailant then forced her to engage in sexual intercourse with him. Finally, she was forced to perform fellatio on the assailant.
At trial the appellant was identified as the assailant by the prosecutrix, and by Miss Lowe and Mr. Wilson. The appellant presents six arguments in which he calls for a reversal of the trial court's decision.
 I
The appellant contends that the jury selection process utilized in Jefferson County violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Section 714, Vol. 14, Appendix, Code of Alabama 1940, Recompiled 1958, applies to counties attaining a population of 400,000 or more. The above statute provides for a "one for one" strike procedure. In counties with a population of less than 400,000, a defendant is allowed two strikes for every one strike allowed the State. Jefferson County is the only county in Alabama which has attained a population of 400,000 or more.
We hold, as we have consistently held for the past forty years that § 714, Vol. 14, Appendix, Code of Alabama 1940, Recompiled 1958, does not violate the United States Constitution. Colston v. State, 57 Ala. App. 4, 325 So.2d 520
(1975), cert. denied, 295 Ala. ___, 325 So.2d 531; Mallory v.State, 55 Ala. App. 82, 313 So.2d 203 (1975); Bryant andWilliams v. State, 49 Ala. App. 359, 272 So.2d 286, cert. denied, 289 Ala. 740, 272 So.2d 297, cert. denied,412 U.S. 922, 93 S.Ct. 2744, 37 L.Ed.2d 149 (1973); Junior v. State,47 Ala. App. 518, 257 So.2d 844, cert. denied, 288 Ala. 744,257 So.2d 852 (1972); Dixon v. State, 27 Ala. App. 64, 167 So. 340, cert. denied, 232 Ala. 150, 167 So. 349 (1936).
 II
The appellant contends that § 714, Vol. 14, Appendix, Code of Alabama 1940, Recompiled 1958, violates Article 4, § 106, of the Alabama Constitution which requires that all "local laws" be advertised. In Reynolds v. Collier, 204 Ala. 38, 39,85 So. 465, 467 (1920), the test was given for distinguishing *Page 686 
local laws from general laws as follows:
 ". . . The effect of all of our decisions, in short, has been that where there is a substantial difference in population, and the classification is made in good faith, reasonably related to the purpose to be effected and to the difference in population which forms the basis thereof, and not merely arbitrary, it is a general law, although at the time it may be applicable to only one political subdivision of the state; but that if the classification bears no reasonable relation to the difference in population, upon which it rests, in view of the purpose to be effected by such legislation, and clearly shows it was merely fixed arbitrarily, guised as a general law, and, in fact, is a local law, it is then in plain violation of the Constitution and cannot be upheld."
Dixon, supra, sets forth the rationale for the statute in question. It is obvious that some of the reasoning of Dixon is outdated. However, we hold as we held last year in Mallory, supra, that the basic factors of increased crime in the more populated areas of the country make the overall reasoning ofDixon still sound today. We do not find that the legislature has acted either unreasonably or arbitrarily in limiting the "one for one" strike system to counties with populations exceeding 400,000.
 III
The appellant contends that the "one for one" strike procedure which applies only to Jefferson County is invalid as it violates the newly enacted Judicial Article. Section 139 of Article VI of the Alabama Constitution provides for a unified judicial system. We again hold as we held in Colston, supra, that a "unified judicial system" has reference only to the establishment of a system of appellate, circuit, district, probate, and municipal courts. It has no application to the procedures used to strike juries in the various counties.
 IV
The appellant contends his conviction should be reversed due to the discriminatory removal of all blacks from the jury venire. It is contended that the State's pattern of use of its preemptory challenges in cases where the victim is white and the defendant is black violates the Equal Protection Clause of the United States Constitution. In the present case, there were twelve blacks on the trial venire. The State had thirteen strikes, twelve of which were used to eliminate the twelve blacks.
Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759
(1965), traces the purpose and history of the preemptory challenge. There it was held that the presumption in any particular case must be that the prosecutor used the State's challenges to obtain a fair and impartial jury to try the case. Such a presumption is not overcome, and the prosecutor therefore subjected to examination, by mere allegations that in the case at hand all blacks were removed from the jury, or that they were removed because they were blacks. However, Swain, supra, did hold that proof that a state has not seen fit to leave a single black on any jury in any criminal case might support a reasonable inference that blacks were excluded from juries for reasons wholly unrelated to the outcome of a particular case on trial and that the preemptory system was being used to deny blacks the same right and opportunity to participate in the administration of justice as was enjoyed by the white population.
The appellant, at an evidentiary hearing after selection of the petit jury, called seven attorneys who professed to be familiar with criminal proceedings in Jefferson County. The attorneys testified that it was their experience that in all cases in which the victim was white and defendant was black that the State used its preemptory challenges to strike every black possible.
There was no evidence offered by the appellant to show the State's disposition to strike blacks in cases where the victim was white and the defendant was white, or *Page 687 
where the victim was black and the defendant was black, or where the victim was black and the defendant was white. We suspect that in the latter situation, the State would have a tendency to strike whites whereas the defense counsel would have a tendency to strike blacks.
The appellant has not made out a prima facie case of violation of the Equal Protection Clause. The burden appears to be a showing that a prosecutor in a county, in case after case, whatever the circumstances, whatever the crime, and whoever the defendant or the victim may be, is responsible for the removal of blacks, with the result that no blacks ever serve on petit juries. Swain, supra.
 V
The appellant contends the trial court erred in holding that the State met its burden of proof regarding each of the elements of rape. An essential element of rape is actual penetration. Title 14, § 396, Code of Alabama 1940.
A doctor who examined the prosecutrix a few hours after the alleged rape testified that there was no penetration past the hymen. The doctor also testified that there were no signs that she had been sexually abused. It was, however, his opinion that a penetration of the vaginal area of up to two centimeters would have been possible without there being any evidence of penetration. This opinion was based in part upon the elastic quality of a hymenal ring.
The prosecutrix testified on the element of actual penetration as follows:
"Q. Did he put his private parts into yours?
"A. Not all the way.
"Q. All right. Now —
 "THE COURT: What did she say? The question was, `Did he put his private parts into yours?'
"What was the answer to that question?
"A. Partway.
"THE COURT: Partway?
"A. Yes, sir.
 "Q. You said he didn't get it in all the way, but partway.
"Is that what you are saying?
"A. Yes, sir."
In Peeples v. State, 50 Ala. App. 626, 282 So.2d 65 (1973), the facts were substantially similar to those in the present case. In Peeples, supra, a doctor testified that the hymen was still intact although there was an abrasion adjacent to, but outside the vagina. The court held that the evidence was amply sufficient to establish penetration.
The test is whether there was an actual penetration and not whether there was full penetration. We hold, in the present case, that there was sufficient evidence to present a question of fact for the jury to the element of actual penetration.
 VI
The appellant's final contention is that the trial court erred in admitting into evidence the appellant's cap and shirt. The cap and shirt were identified at trial by the prosecutrix and by Miss Lowe and Mr. Wilson as being similar to a cap and shirt worn by the assailant on the night of the rape.
The articles were seized at the appellant's home without a search warrant although there was ample time to obtain a warrant. The appellant was incarcerated in the Birmingham City Jail at the time of the search. If the search was in violation of the Fourth Amendment to the United States Constitution then the cap and shirt should have been excluded from evidence. Mappv. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961).
The State contends that the search was made pursuant to the consent of the appellant's wife, Beverly Ann Liptroth. The test as to the validity of third party consents is set forth in footnote 7 in United States v. Matlock, 415 U.S. 164,94 S.Ct. 988, 39 L.Ed.2d 242 (1974) as follows:
 ". . . The authority which justifies the third party consent . . . rests rather on mutual use of the property by *Page 688 
persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched."
From the record it is certain that Mrs. Liptroth had the authority to consent to the search. The remaining issue is whether Mrs. Liptroth's consent was voluntary under the "totality of the circumstances" test as set forth inSchneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854 (1973).
The police officer who made the search testified that he asked Mrs. Liptroth's consent to search the house. When she replied that he could make such a search, he asked if she would mind signing a consent form. Mrs. Liptroth signed the consent form, and the form was presented at trial.
Mrs. Liptroth testified that the officer told her she might as well consent to the search because he had a warrant in the car. The officer denied making such a statement. Mrs. Liptroth also testified that she signed the consent form after the search was completed but that she did not read the form nor did she know the contents of the form.
The trial court ruled that the evidence should not be excluded as he believed the police officer's version of the facts surrounding the consent rather than the version given by Mrs. Liptroth. Where there is conflicting evidence as to whether or not a party has consented to a search, the trial court is in the better position to determine consent or lack thereof. Jones v. State, 49 Ala. App. 438, 272 So.2d 910 (1973);Payton v. State, 47 Ala. App. 347, 254 So.2d 351 (1971). Nothing contained in the record indicates that the trial court's judgment in the present case was erroneous.
AFFIRMED.
All the Judges concur.