Rape; sentence: life imprisonment.
There is a companion case to the present case. Liptroth v.State, Ala.Cr.App., 335 So.2d 683, cert. denied Ala.,335 So.2d 688 (1976). This Court in that case affirmed the appellant's conviction for the rape of a teenage girl on June 22, 1974. The appellant now appeals from the conviction of the rape of another teenage girl on the same night, in the same house, and at approximately the same time. The facts surrounding the two alleged rapes, except for the identity of the victim, are essentially the same. Suffice it to state that the evidence presented by the State was overwhelming. The appellant presents four arguments on appeal. We pretermit lengthy discussion of the first three arguments as they were discussed in detail inLiptroth, supra (hereafter referred to as Liptroth I).
 I
The appellant contends Volume 14, § 714, Appendix, Code of Alabama 1940, Recompiled 1958, violates the Fourteenth Amendment to the Constitution of the United States by denying to defendants in Jefferson County due process and equal protection, because it provides a one-for-one striking of the jury venire. The trial court incorporated the evidence presented in Liptroth I on this issue into the present case. This Court held in Liptroth I that Volume 14, § 714, did not violate the United States Constitution. We arrive at no different conclusion here.
 II
The appellant contends the alleged use of peremptory challenges to exclude blacks from juries violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. Again the evidence presented in Liptroth I on this issue was incorporated into the present case by the trial court. We held in Liptroth I that the appellant had not presented a prima facie case of violation of the Equal Protection Clause. Swain v. Alabama, 380 U.S. 202,85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Based on the same authority, we again hold that the appellant did not present a prima facie case of violation of the Equal Protection Clause.
 III
The appellant contends that the trial court erred in admitting into evidence the appellant's cap and shirt. The clothing was obtained when the appellant's wife consented to a search of the appellant's home. The evidence regarding consent was, in pertinent part, the same as that presented in LiptrothI. This Court held that the consent was voluntary in that case. We again hold that nothing contained in the present record indicates that the trial court's determination that the consent was voluntary was erroneous.
 IV
The appellant's final contention was not raised in LiptrothI. The appellant apparently questions the admissibility of the in-court identifications by the three eyewitnesses to the rapes. After the rapes, the witnesses separately produced, with the help of a police technician, a composite likeness of the assailant. They then collectively chose the best composite of the three. The police then separately showed each witness *Page 961 
eight photographs. All three witnesses individually picked the appellant as the assailant. They all noted, however, that another man's picture resembled the assailant.
The appellant appears to contend that the photographic display produced a substantial likelihood of misidentification which irreparably tainted the witnesses' in-court identifications. We recently discussed in some detail the various issues which relate to identification procedures.Childers v. State (1976), Ala.Cr.App., 339 So.2d 597, cert. denied Ala., 339 So.2d 601. There we set forth certain factors which must be considered when evaluating the likelihood of misidentification, whether in-court or out-of-court. All of the factors set forth in Childers weigh extremely heavy against misidentification in this case. The factors are as follows:
A. The witnesses had ample opportunity to view the assailant at the time of the rapes. The assailant was in the house for approximately forty-five minutes during which time he wore no mask or disguise. Part of the time he was in a well lighted room.
B. The witnesses' attention during this period was devoted solely to the assailant.
C. The witnesses' initial description of the assailant accurately depicted the appellant.
D. The witnesses were certain of their identifications, both in-court and out-of-court.
E. Six days elapsed between the night of the rapes and the out-of-court identification. The in-court identifications took place approximately five months after the rapes.
The preceding factors illustrate that there was no likelihood of misidentification in this case. The appellant, in brief, points to some very minor discrepancies in the witnesses' testimony. He also points out that only two of the men featured in the photographic display wore tank top shirts like that described as having been worn by the assailant on the night in question. However, taken as a whole, the appellant appears to contend that the witnesses lied and not that they were mistaken. Of course, this is an argument which should be addressed to the jury and not to this Court. We find no likelihood of misidentification in the out-of-court or the in-court identifications. Therefore, we hold the trial court did not err in allowing the witnesses to make an in-court identification of the appellant.
AFFIRMED.
All the Judges concur.