**William Odley TARTER, Jr., individually and on behalf of all others similarly situated, Plaintiff-Appellant,**

v.

**Fob JAMES, et al., Defendants-Appellees.**

No. 81–7219.

United States Court of Appeals, Eleventh Circuit.

Feb. 8, 1982.

George H. Jones, Birmingham, Ala., for plaintiff-appellant.

Ronald C. Forehand, Asst. Atty. Gen., Montgomery, Ala., Earl Morgan, Dist. Atty., Stephen Mahon, Asst. Dist. Atty., Jefferson County, Kenneth Gomany, Deputy Dist. Atty., Birmingham, Ala., Elizabeth Ann Evans, Asst. Atty. Gen., Montgomery, Ala., for defendants-appellees.

Before THORNBERRY,* FAY and HATCHETT, Circuit Judges.

PER CURIAM:

The judgment is AFFIRMED based upon the Memorandum Opinion entered by the trial court on February 23, 1981 and attached hereto.

## MEMORANDUM OPINION

This action for declaratory judgment and equitable relief attacks as unconstitutional Volume 14, Section 714, Appendix, *Code Ala.* (1940) (Recompiled, 1958), as retained by *Code Ala.*, § 1–1–10 (1975), which provides, *inter alia,* that defendants in criminal cases in Alabama counties having a population of 400,000 or more are entitled to one jury strike for each strike permitted the prosecution during jury selection (hereinafter referred to as the "one-for-one" statute). The basis for plaintiff's claim is that, in the absence of this "one-for-one" statute, he would have been allocated two jury strikes for each one allocated to the prosecution, as is otherwise provided for in *Code Ala.*, § 12–16–122 (1975).

The challenged statute applies only to Jefferson County, Alabama. Plaintiff contends that this disparity of treatment between Jefferson County criminal defendants and those in other counties violates his rights guaranteed under the fifth, sixth, seventh and fourteenth amendments to the United States Constitution. The particular rights are not specified. It would appear, giving the complaint the most charitable reading, that plaintiff claims a denial of his right to due process (fifth and fourteenth amendments), trial by impartial jury (sixth amendment), and equal protection (fourteenth amendment). The seventh amendment guaranteeing jury trials in common law civil actions is not applicable.

Plaintiff also contends that the "one-for-one" statute violates similar state constitutional provisions, specifically Article I, §§ 6, 11 and 13 of the Constitution of Alabama, 1901. These provide:

That in all criminal prosecutions, the accused has a right to be heard by himself and counsel, or either; to demand the nature and cause of the accusation; and to have a copy thereof; to be confronted by the witnesses against him; to have compulsory process for obtaining witnesses in his favor; to testify in all cases, in his own behalf, if he elects so to do; and, in all prosecutions by indictment, a speedy, public trial, by an impartial jury of the county or district in which the offense was committed; and he shall not be compelled to give evidence against himself, nor be deprived of life, liberty, or property, except by due process of law; but the legislature may, by a general law, provide for a change of venue at the instance of the defendant in all prosecutions by indictment, and such change of venue, on application of the defendant, may be heard and determined without the personal presence of the defendant so applying therefor; provided, that at the time of the application for the change of

* Honorable Homer Thornberry, Circuit Judge for the United States Court of Appeals for the Fifth Circuit, sitting by designation.

venue, the defendant is imprisoned in jail or some legal place of confinement.

Ala.Const. art. I, § 6.

That the right of trial by jury shall remain inviolate.

Ala.Const.1901, art. I, § 11.

That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial or delay.

Ala.Const.1901, art. I, § 13.

There are no state constitutional rights sought to be vindicated which are not also protected by the federal constitution. (Plaintiff argues state constitutional deficiencies in his brief which are not alleged in the complaint, and consequently were not considered by the court.) Plaintiff's claim therefore may be divided into three parts: due process, equal protection, and trial by jury.

The court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1343 and 2201.

## FEDERAL CONSTITUTIONAL CHALLENGES

In *Missouri v. Lewis*, 101 U.S. 22 (1879), the Supreme Court upheld a Missouri statutory scheme challenged as a denial of equal protection. The Missouri Constitution and statute in question provided for direct appeal to the Missouri Supreme Court from the final judgment or decree of any circuit court in the state except for those in four named counties and the City of St. Louis. A separate appellate court vested with exclusive jurisdiction over appeals and writs of error was established for these four counties and city. An appeal to the State Supreme Court from this intermediate appellate court would lie only in cases where the amount in dispute exceeded $2,500, in cases involving the construction of the federal or state constitution, and in some other enumerated cases of special character. Thus, the statutory scheme, in some situations, allowed no appeal to the State Supreme Court in a case arising in the specified four counties and city, while a direct appeal would lie in a similar case arising in the circuit court of any other county in the state.

The Court held the scheme to be constitutionally permissible under the equal protection clause of the fourteenth amendment:

We might go still further, and say, with undoubted truth, that there is nothing in the Constitution to prevent any State from adopting any system of laws or judicature it sees fit for all or any part of its territory. If the State of New York, for example, should see fit to adopt the civil law and its method of procedure for New York City and the surrounding counties, and the common law for the rest of the State, there is nothing in the Constitution of the United States to prevent its doing so. This would not, of itself, within the meaning of the Fourteenth Amendment, be a denial to any person of the equal protection of the laws. If every person residing or being in either portion of the State should be accorded the equal protection of the laws prevailing there, he could not justly complain of a violation of the clause referred to. For, as before said, it has respect to persons and classes of persons. *It means that no person or class of persons shall be denied the same protection of the laws which is enjoyed by other persons or other classes in the same place and under like circumstances.*

The Fourteenth Amendment does not profess to secure to all persons in the United States the benefit of the same laws and the same remedies. Great diversities in these respects may exist in two States separated only by an imaginary line. On one side of this line there may be a right of trial by jury, and on the other side no such right. Each State prescribes its own modes of judicial proceeding. If diversities of laws and judicial proceedings may exist in the several States without violating the equality clause in the Fourteenth Amendment, there is no solid reason why there may

not be such diversities in different parts of the same State.

101 U.S. at 31 (emphasis added).

In *Hayes v. Missouri*, 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578 (1887), the Supreme Court upheld a Missouri statute which provided that, in capital cases arising in cities with a population of over 100,000, the prosecution was entitled to fifteen peremptory jury challenges, while elsewhere in the state it was allowed only eight. The Court stated:

The constitution of Missouri, and, indeed, of every state of the Union, guaranties to all persons accused of a capital offense, or of a felony of lower grade, the right to a trial by an impartial jury, selected from the county or city where the offense is alleged to have been committed; and this implies that the jurors shall be free from all bias for or against the accused. In providing such a body of jurors, the state affords the surest means of protecting the accused against an unjust conviction, and at the same time of enforcing the laws against offenders meriting punishment. To secure such a body numerous legislative directions are necessary, prescribing the class from whom the jurors are to be taken, whether from voters, tax-payers, and freeholders, or from the mass of the population indiscriminately; the number to be summoned from whom the trial jurors are to be selected; the manner in which their selection is to be made; the objections that may be offered to those returned, and how such objections shall be presented, considered, and disposed of; the oath to be administered to those selected; the custody in which they shall be kept during the progress of the trial; the form and presentation of their verdict; and many other particulars. All these, it may be said in general, are matters of legislative discretion. But to prescribe whatever will tend to secure the impartiality of jurors in criminal cases is not only within the competency of the legislature, but is among its highest duties. It is to be remembered that such impartiality requires, not only freedom from any bias against the accused, but also from any prejudice against his prosecution. Between him and the state the scales are to be evenly held.

Experience has shown that one of the most effective means to free the jurybox from men unfit to be there is the exercise of the peremptory challenge. The public prosecutor may have the strongest reasons to distrust the character of a juror offered, from his habits and associations, and yet find it difficult to formulate and sustain a legal objection to him. In such cases, the peremptory challenge is a protection against his being accepted.

The number of such challenges must necessarily depend upon the discretion of the legislature, and may vary according to the condition of different communities, and the difficulties in them of securing intelligent and impartial jurors. The whole matter is under its control.

120 U.S. at 69–70, 7 S.Ct. at 350–351 (Citations omitted). *See also Spinkellink v. Wainwright*, 578 F.2d 582, 596 (5th Cir. 1978) (citing *Hayes*); *United States v. Newman*, 549 F.2d 240, 246 (2d Cir. 1977).

The Court went on to say:

The right to challenge is the right to reject, not to select, a juror. If from those who remain, an impartial jury is obtained, the constitutional right of the accused is maintained. In this case it is not even suggested that the jury by which the accused was tried was not a competent and impartial one. He was allowed 20 peremptory challenges, and it does not appear that he exhausted them.

The fourteenth amendment to the constitution of the United States does not prohibit legislation which is limited either in the objects to which it is directed, or by the territory within which it is to operate. It merely requires that all persons subjected to such legislation shall be treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed. As we said in *Barbier v. Connolly*, speaking of the fourteenth amendment: "Class legislation, discriminating against some

and favoring others, is prohibited; but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment." 113 U.S. 27, 32 [5 S.Ct. 357, 360, 28 L.Ed. 923].

In *Missouri v. Lewis*, 101 U.S. 22, it was held, that the last clause of the amendment as to the equal protection of the laws, was not violated by any diversity in the jurisdiction of the several courts which the state might establish, as to subject-matter, amount, or finality of their decisions, if all persons within the territorial limits of their respective jurisdictions have an equal right in like cases, and under like circumstances, to resort to them for redress; that the state has the right to make political subdivisions of its territory for municipal purposes, and to regulate their local government; and that, as respects the administration of justice, it may establish one system of courts for cities and another for rural districts. And we may add that the systems of procedure in them may be different, without violating any provision of the Fourteenth Amendment.

120 U.S. at 71–72, 7 S.Ct. at 351–352.

Subsequent Supreme Court decisions have continued to follow *Lewis* and *Hayes. See North v. Russell*, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976); *Salsburg v. Maryland*, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954); *Fay v. New York*, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947); *Brown v. New Jersey*, 175 U.S. 172, 20 S.Ct. 77, 44 L.Ed. 119 (1899). These principles have been applied to situations affecting the jury system as a whole. In *Fay, supra*, for instance, the Court held that the use of special or "blue-ribbon" juries in New York was constitutionally permissible. The Court again emphasized that the defendants received a fair trial. The Court discussed its role in evaluating the state's jury selection process.

The function of this federal Court under the Fourteenth Amendment in reference to state juries is not to prescribe procedures but is essentially to protect the integrity of the trial process by whatever method the state sees fit to employ. No device, whether conventional or newly devised, can be set up by which the judicial process is reduced to a sham and courts are organized to convict. They must be organized to hear, try and determine on the evidence and the law. But beyond requiring conformity to standards of fundamental fairness that have won legal recognition, this Court always has been careful not so to interpret this Amendment as to impose uniform procedures upon the several states. . . .

332 U.S. at 294, 67 S.Ct. at 1630. *See also Vanderwyde v. Denno*, 113 F.Supp. 918, 920 (S.D.N.Y.1953).

The *Lewis* test is still viable with respect to the facial constitutionality of statutes whose applicability is conditioned upon population classifications. *North v. Russell*, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976). In *Russell*, Kentucky's two-tier court system, was attacked. The first-tier police courts are vested with jurisdiction over misdemeanor cases, but an accused is entitled to a *de novo* trial on appeal to the circuit court. The statute attacked in *Russell* provides that judges of police courts in cities of less than a certain population need not be lawyers, but requires the judges in larger cities to have legal training.

The appellant in *Russell*, having been convicted by a non-lawyer judge in a state police court, claimed, *inter alia*, that the system denied him equal protection guaranteed by the fourteenth amendment. In rejecting this claim, the Supreme Court quoted *Lewis* with approval for the proposition that equal protection only requires that "all people within the classified area are treated equally. . . ." 427 U.S. at 339, 96 S.Ct. at 2714.

■ It would appear then that the "one-for-one" statute does not *on its face* infringe on the constitutional rights of Jefferson County criminal defendants. The Supreme Court "has never questioned the State's power to draw reasonable distinctions between political subdivisions within

its borders. *Griffin v. County School Board of Prince Edward County*, 377 U.S. 218, 230–31, 84 S.Ct. 1226, 1232–33, 12 L.Ed.2d 256 (1964); *McGowan v. Maryland*, 366 U.S. 420, 427, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); *Salsburg v. Maryland*, 346 U.S. 545, 552, 74 S.Ct. 280, 284, 98 L.Ed. 281 (1954)." *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 28 n. 66, 93 S.Ct. 1278, 1293 n. 66, 36 L.Ed.2d 16 (1973).

Plaintiff contends, however, that the statute must pass the strict scrutiny standard of review which requires defendants to show a "compelling state interest" in the classification. Plaintiff does not argue that the population based classification involves any sort of "suspect" class. Rather, plaintiff argues that the strict scrutiny test should be invoked because the "one-for-one" statute infringes upon certain fundamental constitutional rights, specifically those relating to his right to trial by jury.

A criminal defendant's right to be tried by an impartial jury is fundamental. However, the Supreme Court decisions upholding various state territorial classifications, including those relating to the jury system itself, have not suggested that the challenged classification must be justified by a "compelling state interest," and this court finds no reason to require such a justification in this case. See *North v. Russell*, 427 U.S. 328, 96 S.Ct. 2709, 49 L.Ed.2d 534 (1976); *Salsburg v. Maryland*, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954); *Fay v. New York*, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947); *Hayes v. Missouri*, 120 U.S. 68, 7 S.Ct. 350, 30 L.Ed. 578 (1887); *Missouri v. Lewis*, 101 U.S. 22 (1879).

▋ "As *North v. Russell, supra*, and the other cases discussed previously make clear, the mere fact that the classification impacts upon the criminal trial or appellate processes is insufficient to require a strict scrutiny analysis." *Francis v. Maryland*, 459 F.Supp. 163, 168 (D.Md.1978).

Plaintiff has cited numerous cases to support his argument that the application of this "one-for-one" statute infringes on his fundamental rights. These cases simply establish that the Supreme Court has elevated to the status of "fundamental" various rights which are not specifically enumerated in the Constitution. *E. g., Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (indigent's right to travel without loss of welfare benefits); *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (marital right of privacy); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (indigent's right to free trial transcript when required for appellate review). These cases bear little relevance to the issue at hand—whether the right to exercise "two for one" peremptory jury strikes is a "fundamental right."

Several cited cases do hold that the right to trial by jury is one of fundamental importance, but these cases involved situations where the method of jury selection was alleged to purposefully exclude segments of the population from jury service, thereby denying a defendant his right to a jury reflecting a cross-section of the community. See, e.g., *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (women); *Carter v. Jury Commission*, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970) (blacks); *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) (blacks).

The court is of the opinion that the relationship between the population based "one-for-one" statute and the plaintiff's right to a trial by jury is too tenuous to require strict scrutiny of the statute. The Supreme Court in *Swain, supra*, recognized without criticism that the prosecution in all states is given "a substantial number of peremptory challenges, the number generally being at least half, *but often equal to*, the number had by the defendant." 380 U.S. at 216, 85 S.Ct. at 833 (emphasis added).

The court concludes that the Alabama "one-for-one" statute impermissibly infringes on the plaintiff's constitutional rights *only if* the population classification lacks any rational basis. *Pennsylvania Bank & Trust Co. v. Hanisek*, 426 F.Supp. 410, 416 (W.D.Pa.1977); *Levy v. Parker*, 346 F.Supp. 897, 902 (E.D.La.1972); *Kaelin v. Warden*, 334 F.Supp. 602, 608–09 (E.D.Pa. 1971). In applying this rational relation

test, the state statute must be upheld "unless the [population] classification is purely arbitrary, oppressive or capricious. *Packard v. Banton*, 264 U.S. 140, 44 S.Ct. 257, 68 L.Ed. 596 (1924). . . ." *Lindauer v. Oklahoma City Urban Renewal Authority*, 452 F.2d 117, 118 (10th Cir. 1971), *cert. denied*, 405 U.S. 1017, 92 S.Ct. 1293, 31 L.Ed.2d 479 (1972).

■ Legislation is presumed to be reasonable. The courts will not set aside a statutory discrimination on the basis of equal protection of the laws if any state of facts may be conceived to justify it. *Salsburg v. Maryland*, 346 U.S. 545, 74 S.Ct. 280, 98 L.Ed. 281 (1954).

■ The role of the federal court is "*not* to prescribe procedures but is essentially to protect the integrity of the trial process by whatever method the state sees fit to employ." *Fay*, 332 U.S. at 294, 67 S.Ct. at 1630. So long as an impartial jury is in fact derived from these procedures selected by the state, due process is satisfied. *See Wolfe v. Nash*, 313 F.2d 393, 397 (8th Cir. 1963).

It is not for this or any other court to evaluate the desirability of the classification system adopted by the Alabama legislature, nor should it determine the issue of reasonableness based upon its own view of the relative effectiveness of the statute with respect to its purported purpose. *See Salsburg, supra.*

The court is of the opinion that the classification challenged in this case has a sufficient rational basis to satisfy the requirements of the federal constitution. It does not in any way diminish the plaintiff's constitutional right to a trial by an impartial jury, and indeed would appear to have been chosen by the state to implement the selection of an impartial jury.

*Dixon v. State*, 27 Ala.App. 64, 167 So. 340, *cert. denied*, 232 Ala. 150, 167 So. 349 (1936), and its progeny explain that the Alabama "one-for-one" statute was designed to aid the more populous areas of the state in dealing with their increased incidences of crime. 167 So. at 345. *See also*

*Mayes v. State*, 350 So.2d 339 (Ala.Crim. App.1977); *Liptroth v. State*, 342 So.2d 959 (Ala.Crim.App.), *cert. denied*, 342 So.2d 961 (Ala.), *cert. denied*, 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147 (1977); *Liptroth v. State*, 335 So.2d 683 (Ala.Crim.App.), *cert. denied*, 335 So.2d 688 (Ala.), *cert. denied*, 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976). As did the Supreme Court in *North v. Russell*, 427 U.S. at 338, 96 S.Ct. at 2714, this court gives a great deal of weight to the reasons articulated by the state court for the differing standards based upon population classifications. The rationale in the *Dixon* line of cases is clearly sufficient to negate plaintiff's allegation that the classification utilized in the Alabama "one-for-one" statute is purely "arbitrary, oppressive or capricious." The court is unable to perceive an absence of rational relationship between the statute and its purported purpose. The court, therefore, finds that the statute does not contravene any of the plaintiff's rights guaranteed by the federal constitution.

## STATE CONSTITUTIONAL CHALLENGES

Many of plaintiff's state constitutional challenges are based upon provisions which essentially mirror those upon which the federal constitutional claims are premised. The determinations made in the preceding portion of this opinion are conclusive as to these state claims as well. Alabama courts have consistently applied the rational relation test to this "one-for-one" statute, and it has consistently been upheld on this ground. *See, e.g., Mayes v. State*, 350 So.2d 339 (Ala.Crim.App.1977); *Liptroth v. State*, 335 So.2d 683 (Ala.Crim.App.), *cert. denied*, 335 So.2d 688 (Ala.), *cert. denied*, 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332 (1976); *Mallory v. State*, 55 Ala.App. 82, 313 So.2d 203 (1975); *Junior v. State*, 47 Ala.App. 518, 257 So.2d 844, *cert. denied*, 288 Ala. 744, 257 So.2d 852 (1972); *Dixon v. State*, 27 Ala. App. 64, 167 So. 340, *cert. denied*, 232 Ala. 150, 167 So. 349 (1936). In light of these cases as well as its own application of the rational relation test, this court cannot jus-

tify overturning the time-tested reasoning employed by the Alabama courts in evaluating the "one-for-one" statute.

Having thoroughly evaluated the plaintiff's claims and both the federal and state constitutions, this court is of the opinion that the Alabama "one-for-one" statute contravenes neither. Accordingly, the defendants' motion for summary judgment is due to be granted.