Rape; life.
The six-year-old victim lived with her mother, half sister and the appellant, her mother's common-law husband, in Elba, Alabama.
On September 12, 1982, the mother left the two children at a neighbor's around 3:30 P.M. When the appellant returned from a fishing trip, he picked up the children and took them home. The victim and her sister unloaded the "water jugs" from the truck and appellant removed the fish. Shortly thereafter, appellant called the victim into the girls' bedroom, removed her shorts and underwear, and placed his private parts into her private parts. The child began to bleed and the appellant placed her in a tub of water.
The victim's mother arrived home about 4:30 P.M. and saw her child in a "tub of blood." According to the mother, the victim "had vomited once and was flowing heavily and she said all she wanted to do was lay down and go to sleep." Further, the mother said the appellant was present in the little girls' room. At that time the appellant told the mother that "it was an accident and I shouldn't — He wouldn't let her go to the doctor." The mother said when the appellant went outside, she "grabbed" the child and ran to a neighbor's house. The appellant subsequently drove her and the child to the hospital.
Dr. David Wilson initially examined the victim and testified that it was his opinion that her injuries could not have been inflicted accidentally and were caused by "forceful penetration."
Dr. Bruno Anthony Santa Rossa was the victim's attending physician and testified that the child had vaginal bleeding and, after days in the hospital, surgery was performed to stop the bleeding. His opinion coincided with that of Dr. Wilson and he added that "the chances of such an object being of accidental nature or such an injury being of accidental nature in my opinion is astronomical."
 I
The appellant contends that the trial judge abused his discretion in allowing photographs of the "crime scene" to be admitted into evidence which were gruesome and served only to inflame the jury.
Generally, photographs "though gruesome and inflammatory in nature, [are] admissible if [they have] a reasonable tendency to prove or disprove some material fact in issue." Richards v.State, 337 So.2d 171 (Ala.Cr.App.), cert. denied, 337 So.2d 173
(Ala. 1976); Carpenter v. State, 400 So.2d 417 (Ala.Cr.App.), cert. denied, 400 So.2d 427 (Ala. 1981); Walker v. State,416 So.2d 1083 (Ala.Cr.App. 1982). It is well settled that the admission of such photographs rests in the sound discretion of the trial judge. Walker v. State, supra; Washington v. State,415 So.2d 1175 (Ala.Cr.App. 1982).
The five photographs in question depicted the place where the rape occurred and indicated the "violence on the person of the victim." Richards v. State, supra; see Farris v. State,57 Ala. App. 390, 328 So.2d 640 (1976). Further, the photographs "tended to corroborate and elucidate" the oral testimony of the witnesses. Wilson v. State, 31 Ala. App. 21, 11 So.2d 563
(1942), cert. denied, 243 Ala. 671, 11 So.2d 568 (1943). *Page 204 
Based on the foregoing, it is our judgment that the trial judge did not abuse his discretion when he allowed the photographs to be admitted into evidence.
 II
The appellant asserts that the photographs were obtained as a result of an unlawful search. He argues that the mother of the victim was only a girlfriend and as such did not have the authority to give consent for the search of his house.
The transcript of evidence shows that the mother of the victim and the appellant had been living together as husband and wife for approximately six years, and that he was the father of her five-year-old daughter, Luverne. Further, that this relationship continued up to the day of the incident in question and that during this time she and the appellant had lived together in the same house.
Under the evidence in this case, the victim's mother had the authority to waive a search warrant and consent to the search.United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988,39 L.Ed.2d 242 (1974); Cobb v. State, 355 So.2d 741 (Ala.Cr.App. 1978); Liptroth v. State, 342 So.2d 959 (Ala.Cr.App.), cert. denied, 342 So.2d 961 (Ala. 1977); Hawkins v. State,333 So.2d 846 (Ala.Cr.App.), cert. denied, 333 So.2d 851 (Ala. 1976).
 III
The appellant insists that his right to a "fair trial was abridged" when the trial court permitted the seven-year-old victim to testify before determining her competency as required by § 12-21-165, Code of Alabama 1975.
Section 12-21-165 (b) provides that: "The court must, by examination, decide upon the capacity of one alleged to beincompetent from . . . infancy." [Emphasis added] Appellant made no objection when the child was first called as a witness or before she was sworn. A witness is presumed to be competent,Smith v. State, 380 So.2d 345 (Ala.Cr.App. 1980), and the trial court "may rely on the adversary process and swear the witness without error if no objection is raised." Conner v. State,52 Ala. App. 82, 289 So.2d 650 (1973), cert. denied, 292 Ala. 716,289 So.2d 656 (1974). The trial court is under no duty to ex mero motu examine a witness to determine his competency to testify.
The victim's competency to testify was not raised until she was being cross-examined. By that time, the child had testified on direct and the trial court had had "the opportunity of observing the manner and appearance of the child while being examined, an opportunity which [this] appellate court does not have." C. Gamble, McElroy's Alabama Evidence § 94.02 (3) (3d ed. 1977). We are not willing to disturb the trial court's ruling on this matter. The appellant had the burden of establishing that the victim was not competent to testify.Smith v. State, supra. In our judgment, her incompetence was not sufficiently shown.
The judgment of conviction by the Coffee Circuit Court, Elba Division, is hereby affirmed.
AFFIRMED.
All the Judges concur.