Jeanette Brown was indicted and convicted for the first degree assault of Ruth Briggs. Sentence was twelve years' imprisonment. Two issues are raised on appeal.
 I
Mrs. Brown alleges that she "was never properly identified in court by the victim during any portion of the State's case in chief." This argument involves the sufficiency of the State's evidence against Mrs. Brown and does not involve any tainted identification testimony or pretrial identification procedure.
The State's evidence tended to prove that seventy-seven-year-old Ruth Briggs was living at the Brown Security Home on June 24, 1984. Mrs. Briggs testified that Mrs. Brown scalded her: "I was in the bathtub and Mrs. Brown run hot water on me and called my cousin [James Berry] to beat me with a big leather strap. And, that is what he did." On cross examination, Mrs. Briggs failed to identify defendant Brown:
 "Q. [Defense Counsel]: Mrs. Briggs, who put you in the bathtub that night?
"A. Mrs. Brown.
"Q. Is this the Mrs. Brown, sitting right here?
"A. No.
"Q. Not this one?
 "A. Let's see — I don't — it wasn't her. I don't — I can't see too good.
"Q. Do you know who put you in the bathtub?
"A. Yes, sir.
"Q. Who cut the water on that morning?"
* * * * * *
"A. Mrs. Brown"
On redirect, Mrs. Briggs admitted that she had "some problems" with her eyesight.
On the night of July 5, 1984, Mrs. Briggs was taken to the emergency room of the Alabama Medical Center. She had "welt marks" or bruises on her arm, elbow, breast, heel and shoulder, and was burned on her left foot, left thigh, and buttocks. Although these injuries were not "life threatening" unless infection set in, Mrs. Briggs was in "serious condition." If left untreated, there would have been a grave risk of serious infection. Some of the burns were already infected.
Rosa Lee Minnifield, Mrs. Briggs' cousin, came to visit Mrs. Briggs. She asked Mrs. Brown to see Mrs. Briggs. Mrs. Brown "went off to get Ruth." Twenty or thirty minutes later, Mrs. Brown returned and said that Mrs. Briggs "wasn't ready to come out." Mrs. Minnifield saw Mrs. Briggs sitting in the bathroom with a towel wrapped around her feet. Mrs. Briggs was "really feeling poorly" and continuously told Mrs. Minnifield to "look at [her] feet." When asked, Mrs. Brown said that Mrs. Briggs' feet were a "little sore."
Lucille Key, Mrs. Briggs' first cousin, went to see Mrs. Briggs on July 3rd after talking with Mrs. Minnifield. At that time Mrs. Briggs stated, "That girl burned me," but Mrs. Key did not know to whom Mrs. Briggs was referring and Mrs. Brown was not in the room when this statement was made.
On July 5, 1984, Dothan Police Corporal Stanley E. Devane interviewed Mrs. Brown at the hospital. She told him that around 6:00 on the morning of June 24, 1984, she placed Mrs. Briggs in the tub containing approximately twelve inches of water. Mrs. Brown stated that she "walked away, over to a shelf that was about five feet away to get a towel. When she returned, the stopper was out of the tub and the hot water was running into the tub onto Mrs. Briggs' foot." Mrs. Brown cut off the water, replaced the stopper and continued to bathe Mrs. Briggs, then went about her routine duties.
Mrs. Brown told Officer Devane that James Berry was with her that morning. *Page 11 
She admitted that Berry "struck Mrs. Briggs while she was sitting in the tub, because she was complaining and trying to get out of the tub because the water was burning her." She stated that Berry "struck Mrs. Briggs several times in the past while trying to control her." Mrs. Brown said she put some butter on Mrs. Briggs' burned foot and that she put some salve on it and wrapped it in a cloth. Although the resident doctor had been to Brown Security Home "several times, seeing other patients," Mrs. Briggs had received no medical attention, but Mrs. Brown told Officer Devane that Mrs. Briggs' foot "did not look all that bad until the day prior to her going to the hospital."
The failure of a victim to identify the accused affects the weight and credibility of the victim's testimony, which are questions for the jury. Johnson v. State, 453 So.2d 1323,1328-29 (Ala.Cr.App. 1984). In this case, the jury could have reasonably concluded that Mrs. Briggs' failure to identify Mrs. Brown as her tormentor was due to the fact that she could not "see too good" and had problems with her eyesight. The jury could also have concluded that Mrs. Briggs' confusion was attributable to her "utter lack of knowledge concerning courtroom procedures [and] from confusing . . . questions on cross-examination." Herrod v. State, 342 So.2d 1388, 1390
(Ala.Cr.App. 1977).
Notwithstanding Mrs. Briggs' failure to positively identify Mrs. Brown at trial, the testimony of Dothan police officer Corporal Stanley Devane clearly identifies the defendant as the "Mrs. Brown" that Mrs. Briggs referred to in her testimony as the one who placed her in the tub, permitted her to remain in a tub of hot water, and allowed James Berry to beat her with a belt.
Corporal Devane testified that he had a conversation with "Jeanette Brown, the Defendant in this case," on the night that Mrs. Briggs was admitted to the hospital. Prior to any questioning, Mrs. Brown voluntarily, intelligently, and knowingly waived her constitutional rights. Mrs. Brown acknowledged that she was the individual who took Mrs. Briggs "to the bathroom area" and "placed her in the tub" on the morning of June 24, 1984. She admitted to Corporal Devane that James Berry came into the bathroom that morning and "struck Mrs. Briggs while she was sitting in the tub, because she was complaining and trying to get out of the tub because the water was burning her."
Jeanette Brown's statement to the police officer clearly identified her as the "Mrs. Brown" referred to by Mrs. Briggs in her testimony. The combined testimony of Mrs. Briggs and Officer Devane supplied the evidence necessary to create a prima facie case and allow the issue of the defendant's guilt or innocence to be decided by the jury.
 II
Mrs. Brown failed to show that extensive, prejudicial pretrial publicity necessitated the removal of her trial to another county. She had the burden of showing to the reasonable satisfaction of the court that a fair and impartial trial could not be had and an unbiased verdict could not be reasonably expected. Anderson v. State, 443 So.2d 1364, 1367-68
(Ala.Cr.App. 1983). Brown failed to show either that the pretrial publicity had saturated the community so as to render the trial setting inherently suspect or the existence of actual jury prejudice generated by the publicity. Nelson v. State,440 So.2d 1130, 1131-32 (Ala.Cr.App. 1983).
In support of her motion of a change of venue, Brown elicited testimony from only two witnesses. A reporter for The DothanEagle identified four articles published in the newspaper between July 8, 1984, and September 28, 1984, involving this case. The news director of WOOF Radio testified that his station aired two different stories about this case on July 6th. Another story was aired three times on August 23, 1984. Brown was tried on October 15, 1984. We find no abuse by the trial court of its *Page 12 
discretion in failing to order a change of venue.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.