The appellant, Jerry Wayne Brooks, was convicted of rape in the first degree and, following a habitual offender hearing, was sentenced to life imprisonment without parole.
The victim testified that she was 10 years old. She testified that she and her little sister were staying with her grandmother on the afternoon in question until her father arrived to take them home. The victim and her sister watched television when they arrived home, while her father lay on the couch. Her father then put her little sister outside to play and took the victim into his bedroom. The victim testified that her father made her remove her clothes and also took off his clothing. She testified that her father then got on top of her and hurt her "monkey." After he let her get up, she went to her bedroom and discovered that she was bleeding. She then took a bath and changed her clothing. She lay down on her bunk bed until her mother came home. She further testified that when her mother arrived home, her sister informed the mother that the victim was sick. The mother went in the victim's bedroom, pulled back the covers, and saw the blood on the bed. She took the victim and her sister to the hospital. The victim further testified that, when her father was on top of her, she was fighting and screaming.
The victim's sister testified that she was six years old. She testified that on the day in question, her father put her outside to play. She further testified that when she went inside, she saw blood in the bathroom and in the bedrooms. She testified that when her mother came home, she informed her that the victim was sick and they went to the hospital.
The victim's mother testified that when she arrived home on the day in question she noticed the blood on the towels and then went to her bedroom. The appellant was lying on his stomach across the bed. She testified that when she bent down to pick up her gown, she noticed blood on the bottom of the appellant's feet; she said she also had observed blood on the floor. She then went to the bathroom and there she observed "blood all over the bathroom" and noted that a pair of undershorts behind the door was "just drenched with blood." The victim's sister then informed her that the victim was sick. She walked over to the victim, pulled the covers back, and found her lying in a puddle of blood. She testified that when she observed where the blood was coming from, she took the victim to the hospital. She further stated that the victim referred to her private parts as her "monkey." *Page 197 
Dr. Jose Gonzalez testified that he was the emergency room physician when the victim was brought to the hospital. He testified that she was hysterical and cried each time he got close to her. He testified that the victim was bleeding vaginally, but he was unable to conduct any examination because she fought him. He testified that he attempted to sedate her but that she would wake up and start fighting again each time he touched her. He testified that when he was finally able to complete an extensive examination, he found a large clot of blood in the vagina as well as a laceration in the lower area of the vagina. Dr. Gonzalez testified that they were unable to stop the bleeding, so an obstetrician was called. Dr. Howard F. Williamson, a specialist in gynecology, testified that he examined the victim after she had been sedated. He testified that she had been bruised on the outside of the vagina; he said that there was a small tear at the opening and a long tear inside that was causing most of the bleeding. Dr. Williamson testified that "for those type injuries to have occurred there would have to be penetration of the vagina by an object approximately the size of a penis." The victim underwent surgery and remained in the hospital for two or three days. Dr. Williamson further testified that he conducted a follow-up procedure and determined that the victim had developed a herpes infection.
James Allison, of the Cullman County Sheriff's Department, testified that he went to the hospital to speak to the victim's mother. While there, he obtained a consent form to conduct a search of her house and property. A pair of men's shorts was recovered from the house and transported to the State laboratory for the Department of Forensic Sciences. Allison testified that the appellant was arrested ten days after the offense. The appellant was armed but made no attempt to resist arrest.
Roger Morrison, of the Alabama Department of Forensic Sciences, testified that he examined the shorts and found bloodstains on the outside and bloodstains, vaginal secretions, and some seminal fluid on the inside of the shorts.
The appellant testified that on the day in question he left for work at approximately 6:00 a.m. and, after working an hour, it began to rain so he and a friend began to drink. The appellant then drove to purchase beer and whiskey before returning home. He said he began working on his truck, and he testified that he failed to recall anything after that until he awoke the following morning in his truck at Lake Catoma. He testified that he was uncertain as to where he was or why he was there. He testified that he began to drink some of the beer in his truck, drove to a store, and telephoned his father. His father told him that a warrant had been issued against him for the rape of his daughter. The appellant testified that he did not recall harming the victim. He further testified that he is an alcoholic and has experienced total blackouts on several occasions in the past. He has never sought professional help for his drinking problem.
 I
The appellant argues that the trial court erred in allowing the introduction of the shorts taken from his residence pursuant to a consent to search obtained from his wife. The appellant further alleges that the consent form was improper because it did not require the officers to look for any specific items, but rather amounted to "an illegal general exploratory search and seizure."
"The prevailing view in this country is that a wife, or other joint occupants of living quarters, may constitutionally give 'consent' to search the premises and a search warrant is not required." Myers v. State, 55 Ala. App. 404, 316 So.2d 235, 237
(Ala.Cr.App. 1975). and cases cited therein.
 "It is well recognized that some third parties may validly consent to a search of premises or the effects of an absent defendant, if such third party shares with the defendant 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.' United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Myers v. State, 55 Ala. App. 404, *Page 198 316 So.2d 235 (1975); Scott [v. State], 337 So.2d 1342 (Ala.Cr.App. 1976). Further, this court has held on numerous occasions that the wife of an absent defendant can validly consent to a search of the premises or effects of the defendant. Cobb v. State, 355 So.2d 741 (Ala.Crim.App. 1978); Liptroth v. State, 342 So.2d 959 (Ala.Crim.App.), cert. denied, 342 So.2d 961 (Ala. 1977), cert. denied, 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147
(1977); Mickens v. State, 428 So.2d 202
(Ala.Crim.App. 1983). See also Jackson v. State, 414 So.2d 1014 (Ala.Crim.App. 1982); Bartlett v. State, 387 So.2d 886 (Ala.Crim.App.), cert. denied, 387 So.2d 890 (Ala. 1980), cert. denied, 451 U.S. 1016, 101 S.Ct. 3004, 69 L.Ed.2d 388
(1980); Cobb, supra."
Ballard v. State, 461 So.2d 899, 903-04 (Ala.Cr.App. 1984).
The appellant does not dispute that his wife gave a valid, voluntary, intelligent, and knowing consent for the search of their residence. Under the facts of this case, the appellant's wife had the authority to waive the warrant requirement and consent to the search. See Wade v. State, 497 So.2d 593, 594
(Ala.Cr.App. 1986).
While it is true that the Fourth Amendment to the United States Constitution dictates that no warrants shall be issued except those "particularly describing the . . . things to be seized," a consent to an illegal search is a waiver of the constitutional protection from unreasonable searches and seizures. "General exploratory searches and seizures, with or without a warrant, can never be justified and are forbidden and condemned. Marron v. United States, 275 U.S. 192, 48 S.Ct. 74,72 L.Ed. 231 (1927)." Palmer v. State, 426 So.2d 950, 952
(Ala.Cr.App. 1983). The language of the consent to search form, to which the appellant's wife acquiesced, allowed the Sheriff's Department "to make a complete and detailed search of her house and property at the Fairview Community" and "[t]ake any contraband or property that is by law illegal to possess, or any property that is material evidence in a criminal case either against her or anyone else." However, "[w]hen a search is properly authorized by consent, its scope is governed by the terms of its authorization. Walter v. United States,447 U.S. 649, 656-57, 100 S.Ct. 2395, 2401, 65 L.Ed.2d 410, 417 (1980);United States v. Rackley, 742 F.2d 1266, 1271 (11th Cir. 1984)." Ex parte Hilley, 484 So.2d 485, 491 (Ala. 1985). See also Lott v. State, 456 So.2d 857 (Ala.Cr.App. 1984). As the court wrote in Hilley,
 "If one subjects his property to the exclusive or joint control of another, he assumes the risk that consent will be granted by the other to a search of the property."
Id. at 490. See also Liptroth v. State, 335 So.2d 683, 688
(Ala.Cr.App. 1976), writ denied, 335 So.2d 688 (Ala. 1976),Liproth v. Alabama, 429 U.S. 963, 97 S.Ct. 393, 50 L.Ed.2d 332
(1976). The appellant's wife had the authority to consent and, in fact, consented to an expansive and complete search of the premises; thus, the admission of the shorts into evidence was not error.
 II
The appellant contends that the trial court erred in allowing testimony concerning the victim's development of a herpes infection where there was no evidence that the appellant had herpes. The appellant argues that this testimony was simply introduced to create prejudice against him. The State contends that the fact that the victim contracted herpes and the testimony concerning the fact that herpes is contracted almost exclusively through sexual contact were relevant to show that there had been penetration by the appellant. The record indicates that defense counsel objected to this testimony on the grounds of relevancy, materiality, and its prejudicial nature. Such objections are general in nature and will not preserve an issue for review unless the evidence is patently inadmissible. Stephens v. State, 451 So.2d 402, 405
(Ala.Cr.App. 1984).
"Relevance is said to be a matter of logic, not of law. The test of relevancy in Alabama 'is whether the offered evidence bears any relationship to the ultimate inference *Page 199 
for which it is offered.' " Schroeder, Hoffman, Thigpen,Alabama Evidence § 4-1(b) (1987).
 "Questions of relevance or probative value spring principally, if not solely, from the process of evaluating circumstantial evidence. Circumstantial evidence must be distinguished from direct evidence. . . . Circumstantial evidence speaks indirectly to a material proposition of fact by asserting some other proposition of fact from which a logical mind may draw the conclusion or inference that the material proposition of fact is more (or less) likely to be true than it was before considering the circumstantial evidence."
Id.
Dr. Williamson testified that herpes is transmitted through intercourse approximately 99 percent of the time. Thus, the fact that the ten-year-old victim had contracted herpes was relevant as tending to imply penetration.
 III
The appellant contends that the trial court erred by denying his motion for change of venue. The appellant introduced several articles printed in local newspapers which concerned this crime. "The introduction of newspaper articles alone, which merely demonstrate the existence of publicity, does not require a change of venue." Lokos v. State, 434 So.2d 818,827-828 (Ala.Cr.App. 1982), aff'd, 434 So.2d 831 (Ala. 1983), and cases cited therein. "Even if the record did show evidence of widespread pre-trial publicity, such evidence standing alone does not entitle appellant to a change of venue. There must be a showing that pre-trial publicity resulted in actual prejudice to appellant, Dolvin v. State, 391 So.2d 666 (Ala.Cr.App. 1979), aff'd, 391 So.2d 677 (Ala. 1980)." Anderson v. State,455 So.2d 957, 959 (Ala.Cr.App. 1984).
 " 'The burden is on the defendant seeking a change of venue to show to the reasonable satisfaction of the Court that he cannot receive a fair and impartial trial. Such motion is addressed to the sound discretion of the trial court and will not be disturbed on appeal in the absence of gross abuse. Moore v. State, 52 Ala. App. 179, 290 So.2d 246 (Ala.Cr.App. 1974); Hurst v. State, 54 Ala. App. 254, 307 So.2d 62 (Ala.Cr.App. 1974), cert. denied, 293 Ala. 548, 307 So.2d 73 (Ala. 1975).' Hurley v. State, 335 So.2d 183, 188
(Ala.Cr.App.), cert. denied, 335 So.2d 188 (Ala. 1976)."
Harris v. State, 500 So.2d 1292, 1294 (Ala.Cr.App. 1986). The appellant has failed to show either that the pre-trial publicity had saturated the community so as to render the trial setting inherently suspect or that there was an existence of actual jury prejudice generated by the publicity. See Brown v.State, 488 So.2d 9, 11 (Ala.Cr.App. 1986). Although the appellant indicates that several jurors had read about the case, "[t]he standard of fairness does not require jurors to be totally ignorant of the facts and issues involved." Ex parteGrayson, 479 So.2d 76, 80 (Ala.), Grayson v. Alabama,474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985), citing Murphy v.Florida, 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975). The record indicates that the potential jurors who stated that they had read or seen an article concerning this crime stated that they were not prejudiced by the pre-trial publicity and could fairly listen to the evidence presented. The trial court did not err by denying the appellant's motion for change of venue.
 IV
The appellant argues that the trial court erred by admitting into evidence records of prior convictions which were allegedly not properly certified as copies of the minute entries for purposes of enhancement under the Habitual Felony Offender Act. Specifically, the appellant alleges that the failure of the circuit clerk to use the words "minute entry" in his certification of the record shows that the documents failed to comply with the requirements of § 12-17-94(a)(2). According to that statute, the clerk of the circuit court is required:
 "To keep a consolidated docket sheet of civil and criminal cases, the names of *Page 200 
the parties, the character of action or offense, the names of the attorneys and the sheriff's return, which must be entered in all civil and criminal cases standing before trial, in the order in which they are brought, and the bench notes, orders, rulings on motions and pleadings, other preliminary matters and final judgment which have been made in each case by the judge, which shall be the official minutes."
The record clearly indicates that the documents introduced were minute entries of the previous cases, which were duly certified by the circuit clerk. There is no requirement that the circuit clerk include the exact words "minute entry" in his certification. A prior conviction may be proven by the introduction of a certified minute entry, a certified judgment entry, or by the defendant's admission of the prior conviction.Loftin v. City of Montgomery, 480 So.2d 606, 607 (Ala.Cr.App. 1985). See also Lowery v. State, 452 So.2d 897, 899
(Ala.Cr.App. 1984) ("certified copies of court documents were introduced to prove the prior convictions"). The record is void of any error by the trial court in allowing the certified records of appellant's prior convictions into evidence.
 V
The appellant argues that the trial court erred in denying his motion for judgment of acquittal on the basis that he was too intoxicated to form the specific intent necessary to commit the crime of rape in the first degree.
Voluntary intoxication is never a defense against a criminal charge unless "it is so extreme as to render impossible some mental condition which is an essential element of the criminal act." Scott v. State, 333 So.2d 619, 621 (Ala.Cr.App. 1976). "The intoxication must be of such character and extent as to render the accused incapable of consciousness that he is committing a crime, incapable of discriminating between right and wrong — stupefication of the reasoning faculty. Johnson v.State, 32 Ala. App. 217, 24 So.2d 228 (1945); Green [v. State,342 So.2d 419 (Ala.Cr.App. 1977)]." Lee v. State,439 So.2d 818, 821 (Ala.Cr.App. 1983). "Whether the level of intoxication is sufficient to negate an essential element of the crime, such as intent, is a question of fact to be resolved by the jury."Adams v. State, 484 So.2d 1160, 1165 (Ala.Cr.App. 1985). The evidence presented by the prosecution in the case sub judice was sufficient to present the issue to the jury.
AFFIRMED.
All the Judges concur.