The appellant was indicted for forcibly ravishing the prosecutrix, a female. His request for Youthful Offender treatment was denied following a hearing. Following a jury trial, the appellant was found guilty as charged, and the verdict fixed punishment at 99 years imprisonment. The trial court then set sentence in accordance with this verdict.
Dr. Joe M. Cannon testified that he was on duty in the emergency room of the Cooper Green Hospital in November, 1974, as an intern. He testified that on November 16, 1974, he performed a general physical examination, including a pelvic examination on the prosecutrix, shortly after 1:45 in the morning. The testified that from his examination of the vaginal region, there was a trace of blood and a tear in the hymeneal ring. His examination indicated that there "had been probably some intercourse and was a laceration like an abrasion." In his opinion the prosecutrix "had been the victim of a physical assault."
The prosecutrix testified that she was 21 years of age and resided in Hueytown. She testified that she was attending Jefferson State and was employed after school at Loveman's in the Western Hills section of Birmingham. She testified that she had gone to work November 15, 1974, at Loveman's and left her car in the parking lot near the store. She testified that she wore a blue pants suit with white shirt and orange sweater. She testified that as she was coming to get in her car later that evening at the Western Hills Mall, a black male accosted her with a small pistol. He forced her to unlock the car and get into the automobile. She testified that the two of them drove around for perhaps 30 minutes to an hour and that he questioned her as to who her boy friend was, where she went to school and what her favorite music was, all the while pointing the pistol at her. Finally, he drove the car into a deserted section of the city on an old road and pulled the car over and told her, "Bang, bang, you are dead," still pointing the pistol at her. He asked her if she had ever had sexual relations with her boy friend to which she replied no. She stated the appellant then removed her clothing and had sexual intercourse with her.
She said she pleaded and told him to stop and she struggled but that at pistol point he completed the sex act. She said that in a few minutes she got out and put her clothes on and the appellant then got back in the car with her but that she was in somewhat of a state of shock and the appellant then drove not too far from Western Hills Mall where he stopped the car but just before doing so, told her that he was already in trouble with the cops and that if she told the cops, he would get her. She testified that the appellant got out of the car in Ensley and that she immediately, as best she could, drove home where she told her mother that she had been raped.
She said that her parents then took her to the West End Hospital for treatment. She was referred to University Hospital.
On cross-examination he testified she remembered passing a sign near some houses which read, "Wylam" and that she passed a Shell Service Station at the Minor section near North Birmingport. She also stated that while driving with the appellant that they had passed McDonald's Chapel in the Minor section beyond Ensley.
She testified that the next day she went to police headquarters and talked with Police Lieutenant Willis Randall Stricklin *Page 873 
at the Fairfield Police Department. She stated that after talking with Lieutenant Stricklin that they drove out into the section of Birmingham beyond Ensley and she testified that she identified a street where she let the appellant out of the car. She also testified that she turned over the clothing she had worn to Lieutenant Stricklin and a day or two later she selected the photograph of the appellant from some photographs which were given to her and the next day she selected the appellant from a police lineup, that the appellant was standing in the middle position of a five-man lineup. She stated that no attorney was present on this occasion and that only herself and Lieutenant Stricklin were present at the lineup.
The prosecutrix made a positive in-court identification of the appellant at trial.
Lane M. Thigpen testified that he was an employee of the State Toxicology Department in November, 1974. He stated that the Fairfield Police Department delivered several items of female clothing which he examined. He testified that he examined the white nylon panties and found a reddish-brown stain and also a faint red-brown stain on the cuff of the white blouse. He stated that he also made tests on the pants and panties which were "positive for semen."
Leunis D______ testified that she was the mother of the prosecutrix and that they lived in Hueytown, Jefferson County. She testified that her daughter was working part time at Loveman's and that on November 15, 1974, had driven to the Western Hills section where she was to work a shift from 5:30 till 9:00. She testified that her daughter came in that evening and that she screamed that she had been picked up in the parking lot by a black male and raped. She testified that she then accompanied her daughter to the University Hospital in Birmingham that evening for examination.
Willis Randall Stricklin testified that he was a police lieutenant with the Fairfield Police Department. He testified that he arrested the appellant Ervin Harris on November 20, 1974, after he had been identified by the prosecutrix from photographs exhibited to her as a part of his investigation in the alleged rape. He testified that the prosecutrix had driven with him on November 16, 1974, to the 1500 block in Ensley and identified an area where she had let the assailant out of the automobile. He testified that immediately upon his arrest of the appellant he read a Miranda card to him and advised that he would obtain counsel for him and appellant stated he would waive those rights. He stated that the appellant told him he did not commit the alleged rape.
He testified that he was present at the lineup with the prosecutrix a few days after his arrest and that there was no attorney present and that prosecutrix immediately selected the appellant from a group of five persons as soon as they appeared in the lineup. Officer Stricklin also identified some photographs which were of the appellant at the time of his arrest. Lieutenant Stricklin further stated that the appellant said to him he had been playing cards with some cousins and friends on the night in question.
The items of clothing which were delivered to him by the prosecutrix on November 16, 1974, were identified and then placed in evidence, over objection.
The appellant presented the testimony of Ann Clark, Mary Jewett, Cathy Gosha, and Gregory Hunter, all of whom were either cousins or friends of appellant and each testified that appellant had been present with them on the night of November 15, 1974; that they had driven around in an automobile and then had gone over to a friend's and played some records and played cards. They said that the appellant Ervin Harris had eaten dinner with them that evening and that he had been with them all evening on the date in question. *Page 874 
The appellant Ervin Harris testified that on the night of Friday, November 15, 1974, he had been over to his sister's house and that later had gone by his aunt's where he had been playing cards, and listening to some records with several friends. He denied committing the assault on the prosecutrix or that he had ever seen her. He testified he did not drive an automobile very well.
On cross-examination he admitted two prior burglary convictions.
 I
The appellant asserts that the clothing worn by the prosecutrix at the time of the alleged rape were improperly admitted into evidence.
Though such evidence may be only cumulative and may tend to inflame the jury, its admissibility will not be affected, if such clothing sheds light upon a material inquiry, or illustrates the transaction, then such is properly admitted.Floyd v. State, 245 Ala. 646, 18 So.2d 392; Reedy v. State,246 Ala. 363, 20 So.2d 528; Puckett v. State, 213 Ala. 383,105 So. 211; Smith v. State, 248 Ala. 363, 27 So.2d 495.
Where as here, not only does such clothing illustrate the transaction at issue, such clearly established the "act of intercourse" and therefore sheds light upon a material inquiry in this cause. Beyond question, the clothing of the prosecutrix was properly admitted in this cause. Smith v. State, 248 Ala. 363, 27 So.2d 495; Seals v. State, 271 Ala. 142, 122 So.2d 513, and authorities therein cited.
 II
The appellant contends that the State here failed to prove a prima facie case.
Rape is unlawful carnal knowledge of a woman by a man forcibly and against her will. Stewart v. State, 27 Ala. App. 315,172 So. 675, cert. denied 233 Ala. 480, 172 So. 678;Harris v. State, 2 Ala. App. 116, 56 So. 55.
To adopt a statement from appellant's brief which accurately reflects the law in Alabama:
 "Penetration alone, the other elements of the crime concurring, is rape, without regard to the actual completion of the act, and without regard to the condition of the mind of the prosecutrix or of the defendant subsequent to the actual penetration; but there must be actual penetration." Herndon v. State, 2 Ala. App. 118, 56 So. 85; Waller v. State, 40 Ala. 325; Harris v. State, supra; Ballew v. State, 23 Ala. App. 274, 124 So. 123.
Penetration and sexual intercourse are synonymous terms.Ballew v. State, supra. Carnal knowledge is synonymous with sexual intercourse in its legal sense. Reynolds v. State,274 Ala. 171, 146 So.2d 85.
From American Jurisprudence 2d, Vol. 65, Rape, Section 3, we quote:
 "The actual penetration of the female sex organ by the male sex organ is required as an element of rape, according to all the authorities and this penetration constitutes carnal knowledge, which is synonymous with sexual intercourse." Reynolds v. State, supra.
In Vol. 75 C.J.S. Rape § 10 b we find the following:
 "However, penetration to any particular extent is not required, * * * nor need there be an entering of the vagina or rupturing of the hymen, the entering of the vulva or labia being sufficient; but some degree of entrance of the male organ within the labia pudendum is essential."
We have carefully examined this record and beyond question the State proved each element of the offense in question.Thomas v. State, 53 Ala. App. 232, 298 So.2d 652, cert. denied292 Ala. 755, 298 So.2d 657; Kelsoe v. State, 50 Ala. App. 378, *Page 875 
279 So.2d 549, cert. denied 291 Ala. 786, 279 So.2d 552.
Where as here, the evidence is contradictory, a jury question is presented. The jury in performing its function may believe or disbelieve all or any part of the testimony presented by either side. In our opinion, the jury properly found the appellant guilty under the evidence presented. Thomas v. State, supra; Kelsoe v. State, supra; and Williams v. State,51 Ala. App. 1, 282 So.2d 349, cert. denied 291 Ala. 803,282 So.2d 355.
We have carefully examined this record and found no error therein. The judgment is due to be and the same is hereby
AFFIRMED.
HARRIS, DeCARLO and BOOKOUT, JJ., concur.