This is an appeal from a judgment convicting appellant and sentencing him to imprisonment for five years for grand larceny of an "Acetylene Welder Set."
A major insistence of appellant is that the trial court erred in overruling defendant's motion to suppress as evidence the specified personal property that was found without a search warrant therefor in the garage of defendant, appellant contending, as he did on the trial, that there was a violation of his right to freedom from unreasonable search and seizure guaranteed by the Fourth Amendment to the Constitution of the United States.
The garage in which the stolen property was located was a two-car garage with a *Page 887 
door for each car. It was located on two separate lots with half of the garage on one lot and the other half on the other, the line of division being the boundary line between the two lots as it ran from midway between the two doors to a point at the center of the back of the garage. There was no partition or marker of any kind between the two parts of the inside of the garage. Defendant and his wife lived in a dwelling on one of the lots and used as a garage that part of the two-car garage that was on the same lot; Mr. and Mrs. Holder and family lived in the dwelling on the other lot and used as a garage that part of the two-car garage on that lot.
On January 10, 1979, the owner of the welding set reported the theft thereof to Deputy Dennis Spradlin, an investigator with the Cullman County Sheriff's Office. Deputy Spradlin obtained a description of the property and the names of three people that had recently been engaged in construction work at the site from which the welding set was stolen. One of the three was Dennis Bartlett. Unable to locate Mr. Bartlett at his work, Deputy Spradlin proceeded on January 11, 1979, to Mr. Bartlett's residence, accompanied by another officer. Both doors of the two-car garage were closed. He went to the back door of defendant's residence and knocked on the door; Mrs. Bartlett came to the door; he inquired whether Mr. Bartlett was at home, and she replied that he was not. He asked her if he could look in her garage and she said, "No."
Deputy Spradlin testified that he then went to the residence of Mr. and Mrs. Holder, let her know what he was looking for, and asked her permission to search her garage. She gave her permission and manifested it by her signature to a consent search form. The deputy then walked into the Holders' side of the garage; he did not go into the Bartletts' side, but he saw therein a welding set in plain view, which matched the description of the set given to him by the owner of the stolen set. According to his further testimony, he and his accompanying officer then returned to their automobile, and he phoned headquarters; while he was in the process of advising headquarters and the office of the district attorney, Mr. Bartlett drove up in an automobile. The officer told him "what we were doing, told him why we [at that time Mr. Larry Waldrip had joined them] were there and I needed to know where the acetylene tank came from." Mr. Bartlett then excused himself to go to the bathroom and promptly returned. He said, "he didn't know where it came from." The officer asked Mr. Bartlett if he would consent to their going into "his side of the garage." Mr. Bartlett advised that they "could." They walked back through the Holders'side of the garage and went into Mr. Bartlett's side. His testimony continues as follows:
 "I advised Mr. Bartlett that the description of the acetylene tank set there fit the one that we had stolen. I asked him to come to the office with us; we needed to talk to him about it. I told him that we needed to take the tank set with us, he said he didn't care and I instructed Larry Waldrip and David Sandlin to put the tank set in the car. Mr. Bartlett rode up to the county jail with me.
"Q. Was Mr. Bartlett ever placed under arrest?
"A. No.
"Q. Was he ever handcuffed?
"A. No, sir.
". . .
"Q. What happened at the county jail?
 "A. I took Mr. Bartlett, I got a cold drink and asked Mr. Bartlett if he wanted something to drink, and I read his rights to him, again, asked him about the tank set."
Further testimony of Deputy Spradlin was to the effect that before obtaining any further information from appellant, the officer proceeded to read and explain to him his rights from the regular form, including his right to an attorney, and while in the process of doing so appellant "advised that he would like to call his lawyer." Deputy Spradlin then handed Mr. Bartlett the phone book and appellant proceeded to call his named lawyer, who was either busy or *Page 888 
not in his office. Mr. Bartlett left word for him with his secretary to tell him that he was at the county jail. Spradlin further testified: "We talked a few more minutes and he tried to call back, he was still not at his office. He tried two or three times to get ahold of Mr. [his named attorney], we kept talking back and forth about the tank set and so forth, and finally he stated to me that he would give me a statement. I proceeded to take a statement and [his named lawyer] came in about middle way of the statement." The officer then left defendant and his lawyer to themselves in another room, where they were for approximately "ten minutes," with the statement in the handwriting of the officer that appellant had given him orally but which statement was not fully completed. Upon the return of Mr. Bartlett and his attorney from the office, Officer Spradlin was advised by the attorney that Officer Spradlin could complete the statement made by Mr. Bartlett for Mr. Bartlett's signature. The statement was completed, and Mr. Bartlett signed it. The statement was comprehensive as to all requirements as to voluntariness and Miranda warnings against self-incrimination and the right to counsel, at the expense of the state if necessary.
On the motion to suppress evidence as to finding the stolen property in the garage of appellant and taking it to headquarters, defendant offered the testimony of Mrs. Holder, Mrs. Bartlett and Mrs. Bartlett's mother as to what they observed about Officer Spradlin's activities while on or about the premises of the Holders and the Bartletts, in an effort to show an illegal search and seizure. As a whole the testimony is rather lengthy, but nothing has been specified therein on appeal as in conflict with the testimony of Officer Spradlin other than testimony by one or more of them to the effect that before Officer Spradlin obtained the consent of Mrs. Holder to enter their side of the garage, he was peeping into a crack of the garage or under a door thereof.
The court was not in error in overruling defendant's motion to suppress the stolen property as evidence, or in overruling defendant's objection to its introduction in evidence. Officer Spradlin's entry into the Holders' side of the garage had the consent of the only person on the premises at the time who had authority to consent to such entry. It is an established principle of law, on the subject of consent to search and seizure, that where two or more responsible persons are in joint occupancy of particular premises, with coequal rights therein, any one of them, in the absence of some special reason to the contrary, can give a valid and effective consent to a warrantless search thereof. As stated by Judge Tyson in Scottv. State, Ala.Cr.App., 337 So.2d 1342, 1346-1347 (1976):
 ". . . In the area of `consent searches,' it has explicitly been recognized that certain third parties may validly consent to the inspection of premises or effects of an absent nonconsenting defendant if such third part[y] share with the defendant `common authority over or other sufficient relationship to the premises or effect sought to be inspected.' United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242. See also Myers v. State, 55 Ala. App. 404, 316 So.2d 235 (1975), and authorities cited therein; Hawkins v. State, Ala.Cr.App., 333 So.2d 846
(1976)."
A fortiori the right to make a warrantless search of a portion of a jointly occupied or used building does not require the consent of one of two or more joint users who has no legal interest in the particular portion of the building searched.
If there were any real conflict between the testimony of Officer Spradlin and the other witnesses as to any peeping or peering into the garage, the trial court had the authority to accept the testimony of Officer Spradlin on the subject. If, on the other hand, the trial court was of the view that there was some peering or peeping by Officer Spradlin, it was justified in concluding that the same was immaterial, in that it could have revealed nothing significant and that it occurred as to that part of the garage as to which defendant had no standing to complain. *Page 889 
Another major contention of appellant is as to the action of the court in overruling defendant's motion to suppress the oral statements of appellant of an incriminatory nature and his written confession, and in overruling defendant's objections to their introduction in evidence. The testimony, chiefly out of the presence of the jury, as to the voluntariness, Miranda
warnings against self-incrimination and advice as to defendant's right to an attorney, was lengthy and was obviously received by the trial court with great patience, deliberation and consideration. The testimony included that of defendant. He acknowledged in his testimony that he read and understood the statement that he signed. His testimony was in accord with that of Officer Spradlin that he called his attorney three times, that when his attorney came, the attorney and he looked over the statement that had been prepared for his signature by Officer Spradlin, that his attorney advised him to sign it and that he did so. Notwithstanding a possible basis for disapproval of the action of the officer in not waiting longer for defendant's attorney to arrive before continuing a discussion of the matter with defendant, we cannot say that the failure to wait longer was any more attributable to the officer than to defendant. The trial court was justified in holding that the statements of defendant and his written confession were made voluntarily, knowingly and intelligently. Evidence thereof was properly admitted.
During the direct examination of Officer Spradlin, in the presence of the jury, as to what was happening during the time he and defendant were at the desk where defendant was attempting to contact his lawyer by telephone, the following occurred:
 "Q. All right, what happened after he finished his phone call on the second call?
"A. He advised me he was not back yet.
 "Q. Do you remember what occurred after this second call?
 "A. I kept talking to him and he advised me then he was on probation for grand larceny. He wanted to know what would happen, I told him I could not promise him nothing, I don't know what would happen to his probation.
 "MR. CHAMBLEE: I object to that, that is a matter to take up outside the presence of the jury."
Thereupon, out of the presence of the jury, defendant moved for a mistrial, saying that the answer of the witness was so damaging to defendant that the court could not remove the prejudice by instruction to the jury. The court overruled the motion for a mistrial and thereafter instructed the jury, without repeating the witness' answer to the question last asked him, to "put that answer out of your mind, that is not evidence for you to consider for any purpose in this case." The matter was concluded as follows:
 "[COURT] Now, is there any one of you that can't do that, if so raise your hand and let the record show there is not a hand up. You understand under your oath, you are telling me that you will not utilize Officer Spradlin's last answer for any purpose at all in this case.
"Anything else?
"MR. CHAMBLEE: We have taken care of it.
"THE COURT: Thank you very much."
Appellant postulates his present contention that his motion for a mistrial should have been granted by saying that it was "prejudicial testimony specifically barred by the court previously." It is correct that the court, in a hearing out of the presence of the jury, had instructed State's counsel:
 "And you can't ask the defendant or anybody else in the presence of the jury if he testified about any prior conviction or probation or anything like that."
If State's counsel had intentionally asked a question that called for the answer as given by the witness, State's counsel would have been subject to severe censure. We are not persuaded that he did so, or that the answer was any more surprising to defendant's counsel than it was to counsel for the State. Whether the witness deserved censure for the answer depends upon whether he actually heard and understood the previous instruction of the court directed to counsel *Page 890 
for the State. We cannot assume that he did, although, being present, he should have heard it. This leaves an unfortunate answer as to which it cannot be said with reasonable certainty that it was made in defiance of the court's instruction. The court was acting within its province in overruling the motion for a mistrial and thereafter emphatically removing the objectionable matter from the consideration of the jury.
Perhaps it should be said also that during the hearing out of the presence of the jury, there was definite evidence that defendant, at the time of the larceny in the instant case, was on probation on previous convictions and concurrent sentences for grand larceny and that during his talks with Officer Spradlin, after his apprehension in the instant case, he informed Officer Spradlin as to his status. The prosecution did not insist that his conversation as to his status was competent evidence to present to the jury, even though conceivably it may have been. The court's direction to State's counsel not to ask any questions along that line was obviously prompted by an effort of the court to handle the matter before it with absolute impartiality, and particularly with due regard for the rights of defendant, and without any intimation that State's counsel would endeavor to introduce evidence as to defendant's probationary status.
There is no error in the record prejudicial to defendant. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the New Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment below is hereby
AFFIRMED.
All the Judges concur.