[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 901 
Edward Eugene Ballard was charged in separate indictments for sodomy in the first degree and robbery in the first degree. These cases were consolidated for trial and the jury found the appellant "guilty as charged in the indictment" in each case. Following a sentencing hearing the trial judge sentenced appellant to 20 years in the penitentiary for each case, such sentences to run concurrently.
Cynthia Townsend Lane indicated that in January, 1980, she lived with Joe Lane and her three-year-old son in Birmingham, Alabama. She stated that at the time of this incident, she and Joe Lane were not married. She said that Mr. Lane was the manager of Gordon's Jewelry Store in the Century Plaza Mall. On Friday, January 10, 1980, Mr. Lane went to work at approximately 9:00 a.m. At this time they owned two cars, a 1978 Dodge Colt and a 1978 Plymouth. Mr. Lane drove the Dodge to work. Around 8:00 p.m. that night, she and her son drove to the Century Plaza Mall so she could call her sister. They went to Gordon's Jewelry and used the phone. She stated that Mr. Lane was with a customer when she finished her telephone conversation, so she walked around the mall for a short while waiting for him to finish. She then returned to the store but Mr. Lane was still working with the *Page 902 
customer. She decided to go home and wait for Mr. Lane to get off work.
Mrs. Lane testified that she and her son left the mall at 8:30 p.m. and walked to the Plymouth car, which was parked just outside the Sears store. As she was attempting to back out of the parking space, a man opened the door of her car and told her to move over. She said that he pulled a gun from under his coat. The man told her that if she made a wrong move, she would be a "dead broad". This man went through her purse and wallet, and then took a diamond necklace from her. The man then drove the car to a secluded spot in the parking lot. She said he slammed on the brakes, and her son hit his nose, causing it to bleed. She cleaned the blood off her son's face with some socks, then placed him in the back seat at the request of the man. The man then started kissing her and unfastened her bra and pants. He then unfastened his pants and pulled them down a little. At this point the man made her have oral sex with him for just a short time. The man then exited the car and walked back toward Sears. She then drove home. She further stated that she made a complaint to Mr. Lane about the incident, but was afraid to call the police. She said that Mr. Lane drove her to Tennessee to see her sister. She returned on Sunday morning.
She further testified that on Monday morning Mr. Lane found a checkbook in the Plymouth car and called the police. She stated that she had several interviews with Sergeant Howard Miller after the checkbook was found. She described her assailant as wearing a three piece suit, white shirt and sporting a goatee. She identified the appellant as the man who entered the car. She also identified a pistol stating "it appears to be the same gun used that night."
Joe Lane testified that he was the manager of Gordon's Jewelry Store in the Century Plaza Mall and in January of 1980 he was living with Cynthia Townsend and her son. He said that he gave her a one-quarter carat diamond pendant for Christmas in 1979. He said that on Friday, January 10, 1980, Cynthia came to the store to make a telephone call to her sister. He said they were going to Tennessee the following day. He said she made the call, then left the store. He closed the store around 9:15 p.m. and went home. After he had been home for approximately 15 minutes, Cynthia and her son arrived. He said she was upset and crying and that there was blood on her pants and on the little boy's face. They left the apartment and checked with some of his co-workers, then drove to her sister's home in Tennessee. He left her in Tennessee, then went back and got her on Sunday. He said that on Monday morning, he found a checkbook on the front seat of the Plymouth automobile and then called the police.
Vincent Campanella, Jr. testified that he was the general manager of the store which employed Mr. Lane. On January 10, 1980, he observed Mr. Lane, Cynthia, and her son at approximately 10:30 p.m. He stated that Cynthia appeared pale and that her son had dried blood on his face.
Norman Staff testified that he was an officer with the Birmingham Police Department. He responded to a call, talked with Mr. Lane and Ms. Townsend about a robbery complaint and received a checkbook found in a 1978 Plymouth automobile.
Tony Biskup testified that he was employed by the San Jose, California Police Department. On January 15, 1980, he talked with Howard Miller of the Birmingham Police Department concerning a complaint in Birmingham. He went to the appellant's home in California and talked with a person who identified herself as the appellant's wife. He informed her of the Birmingham complaint and she offered to show him some pistols which her husband owned. He stated that he examined and photographed a western style pistol. He talked with the appellant on the telephone while at the appellant's residence and the appellant told him he would come see him at the police station. He stated that the appellant did, in fact, come to the police station and that he took a statement from *Page 903 
him after informing him of his Miranda rights. This interview took place on January 16, 1980. He made a photographic lineup, which included the appellant's photo, and sent it to Birmingham.
Sergeant Biskup further stated that he talked to the appellant again on March 11, 1980, and told him to come in to the police station. The appellant asked him if he should bring the pistol with him. At this time the appellant turned himself in to Sergeant Biskup and surrendered the pistol.
Howard Miller testified that he was employed as a detective with the Birmingham Police Department. He had discussed this case with Ms. Townsend (Lane), Sergeant Biskup and Officer Staff. He received a manila folder with photographs in it from Sergeant Biskup. He testified that he showed this photographic lineup to Ms. Townsend (Lane).
The appellant testified in his own behalf. He stated that he was in Birmingham on January 10, 1980, but that he did not have a gun with him. He indicated that he had gone to the Century Plaza Mall looking for an Oriental restaurant. While at the mall he saw Mrs. Lane and asked her if there was such a restaurant in the mall. She told him there was not but that she could show him where one might be. They walked out of the mall together, and Mrs. Lane told him to get in her car and she would point one out. He said he got in her car on the passenger side. He denied having a pistol, driving her car, touching her in any manner, unzipping his pants and making her have oral sex with him. He stated that she wanted to sell him some jewelry and he took out his checkbook. She refused to take a check so he laid the checkbook down on the seat of the car and looked at the jewelry again. He stated that she then drove her car to the exit and showed him how to get out of the mall area. She then drove him to his car where he got out. He went back to his hotel. The next morning he made some business calls, then flew back to California.
 I
The appellant contends that the trial court erred in overruling his motion to suppress evidence discovered in the appellant's home. Specifically, he argues that the evidence was the product of an illegal search and seizure. The State argues that the search in question was a valid warrantless search of the appellant's residence, consented to by the appellant's wife.
Under the Fourth and Fourteenth Amendments, a search without a warrant not based upon probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions: (1) in plain view; (2) with consent voluntarily, intelligently and knowingly given; (3) as incident to a lawful arrest; (4) in "hot pursuit" or emergency situation; (5) where exigent circumstances exist coincidental with probable cause; and (6) in "stop and frisk" situations.Daniels v. State, 290 Ala. 316, 276 So.2d 441 (1973); Scott v.State, 337 So.2d 1342 (Ala.Crim.App. 1976); Baker v. State,340 So.2d 854 (Ala.Crim.App.), cert. denied, 340 So.2d 860 (Ala. 1976).
The State contends that the search in this case was upheld under the consent exception to such warrantless searches. It is well recognized that some third parties may validly consent to a search of premises or the effects of an absent defendant, if such third party shares with the defendant "common authority over or other sufficient relationship to the premises or effect sought to be inspected." United States v. Matlock,415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); Myers v. State,55 Ala. App. 404, 316 So.2d 235 (1975); Scott, supra. Further, this court has held on numerous occasions that the wife of an absent defendant can validly consent to a search of the premises or effects of the defendant. Cobb v. State, 355 So.2d 741
(Ala.Crim.App. 1978); Liptroth v. State, 342 So.2d 959
(Ala.Crim.App.), cert. denied, 342 So.2d 961 (Ala. 1977), cert. denied, 434 U.S. 869, 98 S.Ct. 210, 54 L.Ed.2d 147 (1977);Mickens v. State, 428 So.2d 202 (Ala.Crim.App. 1983). *Page 904 
See also, Jackson v. State, 414 So.2d 1014 (Ala.Crim.App. 1982); Bartlett v. State, 387 So.2d 886 (Ala.Crim.App.), cert. denied, 387 So.2d 890 (Ala. 1980), cert. denied, 451 U.S. 1016,101 S.Ct. 3004, 69 L.Ed.2d 388 (1980); Cobb, supra.
In this case the transcript shows that the appellant's wife gave her consent to Officer Biskup for his search of their residence. There was testimony that the house was the residence of the appellant and his wife. Under the evidence in this cause, the appellant's wife had the authority to waive the warrant requirement and consent to the search. The evidence sufficiently reveals that she did so voluntarily, intelligently and knowingly, as required. Therefore, we find no error in the trial court's overruling appellant's motion to suppress.
 II
Appellant contends that the pistol allegedly used in committing this crime was inadmissible because proper Miranda
warnings were not given at the time he brought the pistol to the police. A careful reading of the transcript in this cause reveals, however, that proper Miranda warnings were administered to appellant when he consented to bring the gun in to the police.
Consent to a search is voluntarily given where the defendant is not only informed of his Miranda rights, but is also informed of the object of the search before he consents. Further, "where Miranda warnings have once been given, repeated specific warnings of Fourth Amendment rights are not necessary to obtain a valid consent to search." United States v. Jones,475 F.2d 723 (5th Cir.), cert. denied, 414 U.S. 841,94 S.Ct. 96, 38 L.Ed.2d 77 (1973); Behel v. State, 390 So.2d 662
(Ala.Crim.App. 1979), cert. denied, 390 So.2d 671 (Ala. 1980);Hollander v. State, 418 So.2d 970 (Ala.Crim.App. 1982). This search was validly consented to by the appellant, after properMiranda warnings, and was therefore legal. Since the search was legal, the subsequent admission of this pistol into evidence was not error.
 III
The appellant argues that the evidence was not sufficient to sustain a conviction for sodomy in the first degree. Specifically he argues that proof of penetration is required for such an offense and he contends the State failed to prove such.
The victim of the offense in question testified to the following: (R. 138, 141).
 "Q. Okay, When he opened the car door, what did he say, if anything?
 "A. He told me to move over. He took a gun out from in his coat and told me to move over.
. . . . .
"Q. And then what happened?
 "A. He said since you don't have any money or credit cards, or credit cards, I guess you know what I will have to do. And I said no. And he said you know. And so, then he backed the car out and drove around by the Mall out to the side of what was Loveman's at that time, out to the side of the parking lot where there wasn't any cars. And he slammed on the brakes and my son went into the windshield and busted his nose. And I was saying please don't hurt us. And he was saying take care of the kid. And I took a pair of socks that was in the car and cleaned his face up. And then he made him get in the back seat after his nose stopped bleeding. And then he started kissing me and unfastened my bra and my pants. And then he unfastened his pants and pulled them down just a little. And he made me have oral sex with him for just a very short time. And —"
This testimony was the only evidence of the crime elicited during the course of the trial. It is obvious from a careful reading of the transcript that the State presented sufficient evidence of a crime of this nature.
The appellant argues that the applicable statutes in this cause, §§ 13A-6-63 (a)(1), 13A-6-60 (2), Code of Alabama. 1975, *Page 905 
require penetration as an element of the offense charged. However, examination of these statutes reveal no such requirement.
Section 13A-6-63 (a)(1) states that a person commits the crime of sodomy in the first degree if he engages in deviate sexual intercourse with another person by forcible compulsion. Section 13A-6-60 defines deviate sexual intercourse. Such section states that deviate sexual intercourse is any act of sexual gratification between persons not married to each other, involving the sex organs of one person and the mouth or anus of another. A careful reading of these statutes reveals that the term "oral sex", as used by the victim in her testimony, is sufficient under the statute. Furthermore, the "testimony of an unwilling victim of a crime of this nature is sufficient to make out the corpus delicti and sustain the conviction."LaBryer v. State, 45 Ala. App. 33, 222 So.2d 361 (1969); Stevensv. State, 333 So.2d 852 (Ala.Crim.App. 1975), cert. denied,333 So.2d 855 (Ala. 1976); Jackson v. State, 375 So.2d 558
(Ala.Crim.App. 1979). See also, Hutcherson v. State,441 So.2d 1048 (Ala.Crim.App. 1983); Turbyfill v. State, 356 So.2d 775
(Ala.Crim.App. 1978).
 IV
The appellant also contends that the trial judge failed to charge an element of the offense of sodomy in the first degree in his oral charge to the jury and therefore his cause should be reversed.
It should be noted that "if a party objects to that which is stated in the oral charge of the court, that party's remedy is only by proper exception thereto, but, if the objection is to the court's refusal or omission to charge on a particular subject applicable under the evidence or under the law applicable in the case, the appropriate procedure is to request a written charge" covering the matter. Hall v. State,375 So.2d 536 (Ala.Crim.App. 1979). Upon the refusal of the trial court to so charge, the party must "call the trial court's attention to the specific refused written charge and set out a specific ground for his objection to the refusal of that charge."McCormack v. State, 431 So.2d 1336 (Ala.Crim.App. 1982), reversed, 431 So.2d 1340 (Ala. 1983), on remand, 431 So.2d 1341
(Ala.Crim.App. 1983). "A failure to pursue one of these remedies, if proper and applicable to the case, is a waiver of a review by this court as to the matters in question." Wells v.State, 378 So.2d 747 (Ala.Crim.App.), writ denied,378 So.2d 756 (Ala. 1979).
The record reveals that appellant's counsel properly excepted to the court's oral charge, but he did not thereafter tender a written request. Therefore, this issue is not properly before the court for review. Allen v. State, 414 So.2d 989
(Ala.Crim.App. 1982), affirmed Allen v. State, 414 So.2d 993
(Ala. 1982).
 V
The appellant contends that the trial court erred in refusing to charge the jury on lesser included offenses under robbery in the first degree. He specifically argues that, since he denies ever having a pistol and robbing the victim in this case, the trial court should have charged the jury on robbery in the third degree, harassment and menacing, as requested.
It should be noted initially that an exception to an oral charge reaches only that on which the trial court actually charges. "When there is an objection to the trial court's refusal or omission to charge on any particular subject, including a lesser included offense applicable under the evidence, the proper procedure is by way of a requested written charge." Hollis v. State, 399 So.2d 935 (Ala.Crim.App. 1981);Summerville v. State, 429 So.2d 651 (Ala.Crim.App. 1983).
In the case at bar there was a charge conference in which the trial judge relieved the appellant's counsel of this duty. The appellant properly excepted to the oral charge given, and reminded the court of their prior agreement. In this case, because of the charge conference agreement, *Page 906 
the appellant has properly preserved this issue for review.
However, a careful review of the transcript in this case reveals that such requested charges are not applicable under the evidence elicited during this trial. Therefore, the trial judge acted properly in refusing such requested charges.
Moreover, the evidence was sufficient for the jury to convict the appellant of robbery in the first degree. Summerville, supra; Browning v. State, 429 So.2d 653 (Ala.Crim.App. 1983);Agee v. State, 429 So.2d 654 (Ala.Crim.App. 1982).
 VI
The appellant contends that the trial court erred in sustaining objection to a question asked of a co-employee of appellant. He contends that the witness should have been allowed to testify to the amount of the appellant's salary. He further argues that such testimony was relevant to the prosecution, since the State had introduced into evidence the appellant's checkbook.
It should be noted initially that a determination of admissibility of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of discretion. United States v.Dothard, 666 F.2d 498 (11th Cir. 1982); United States v. Penn,721 F.2d 762 (11th Cir. 1983); Ward v. State, 440 So.2d 1227
(Ala.Crim.App. 1983). "To be admissible, the proffered evidence must tend to prove or disprove the main inquiry of the case."Hill v. State, 366 So.2d 296 (Ala.Crim.App. 1978), affirmed,366 So.2d 318 (Ala. 1979); McLeod v. State, 383 So.2d 207
(Ala.Crim.App. 1980). This court has further held that. the determination of relevancy of evidence is left to the sound discretion of the trial judge and this court will not reverse unless discretion has been grossly abused. McCowan v. State,412 So.2d 847 (Ala.Crim.App. 1982); Payne v. State,419 So.2d 286 (Ala.Crim.App. 1982); Wicker v. State, 433 So.2d 1190
(Ala.Crim.App. 1983). Moreover, the trial court may exclude evidence, "when it is such as to furnish a basis for nothing more than mere conjecture, or remote inferences in reference to the transaction under investigation." Trawick v. State,431 So.2d 574 (Ala.Crim.App. 1983) and cases cited therein.
A review of the evidence in this case reveals that such testimony had no probative value to the trial at hand. The trial judge acted properly in sustaining the State's objection.
The remaining issues presented for review by the appellant are wholly without merit.
We have carefully reviewed the record for errors injurious to appellant and have found none therein.
The judgment of the trial court is due to be and the same is hereby affirmed.
AFFIRMED.
All the Judges concur.