Linda S. Crook was convicted of harassment in violation of Alabama Code 1975, § 13A-11-8. Sentence was a fine of $200 and costs. Three issues are argued on appeal.
 I
The defendant contends that the "Alabama Harrassment Statute should fall for vagueness becuase it does not define `alarm, annoy or harass' in any objective manner." We disagree.
In Donley v. City of Mountain Brook, 429 So.2d 603
(Ala.Cr.App. 1982), reversed on other grounds, Ex parte Donley,429 So.2d 618 (Ala. 1983), this Court upheld the constitutionality of the harassing communications section of our harassment statute. Alabama Code 1975, § 13A-11-8 (b). In *Page 692 
this case, the defendant was charged under § 13A-11-8 (a)(1)a., which provides:
 "(a) Harassment — (1) A person commits the crime of harassment if, with intent to harass, annoy or alarm another person, he:
 a. Strikes, shoves, kicks or otherwise touches a person or subjects him to physical contact."
Applying those same principles we applied in Donley andMcCorkle v. State, 446 So.2d 684 (Ala.Cr.App. 1983) (wherein we found the mayhem statute unconstitutionally vague and indefinite), we conclude that § 13A-11-8 (a)(1)a. is constitutional.
New York's harassment statute is similar to Alabama's and provides that "(a) person is guilty of harassment when, with intent to harass, annoy or alarm another person: 1. He strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same." That statute was upheld in People v. Lamb, 86 Misc.2d 1023, 384 N.Y.S.2d 929, 930
(1976): "(T)he Court holds that the statute is not unconstitutional and that it is not too vague to be capable of enforcement. It is rather a question of evidence to be produced at the time of trial as to whether or not the conduct complained of meets the standards necessary to obtain a conviction under the harassment Section."
Although several other states have similar statutes, Model Penal Code § 250.4, n. 25 (1980), we have been cited to no case holding such a statute unconstitutional.
The Model Penal Code itself provides guidance on the issue of constitutionality. Model Penal Code § 250.4 (4) provides: "A person commits a petty misdemeanor if, with purpose to harass another, he: . . . (4) subjects another to an offensive touching."
 "The essential vice of an overbroad law is that, by sweeping protected activity within its apparent reach, it burdens the willingness of citizens to engage in such activity. . . .
 "Vagueness, on the other hand, refers to a statute without core meaning. The absence of identifiable content offends the due process requirement that the penal law give fair warning of what conduct will be punished. . . .
 "In vagueness terms, [Subsection] . . . (4) seem[s] easily to pass muster. In each case, the description of proscribed conduct is relatively plain. . . . Especially when read in light of the overarching requirement of a purpose to harass another, these provisions appear adequately precise to carry fair warning to the interested citizen and to avoid the systemic decay that arises when a statute condemns vast portions of the populace and leaves to police and prosecutors the ability to decide on other bases which individuals will be prosecuted. . . .
 "Section 250.4 would also seem to survive overbreadth review. . . .
 ". . . Subsection (4) deals with offensive touching, an activity that falls outside the traditional scope of constitutionally protected activities." Model Penal Code § 250.4 at 369-71.
The defendant argues that there is no objective definition of what type of "touching" is prohibited. Although the Alabama harassment statute does not qualify the "touching" as "offensive", as does the Model Penal Code, our statute is not completely subjective because of the more demanding requirement that the touching be done with an intent to harass, annoy, or alarm. "It is that element of specific intent that precludes application of this provision to the myriad instances of unwanted jostling and other contact that may occur in any crowded environment but that reflect no purposive effort to harass a fellow citizen." Model Penal Code, supra, at 367. As noted in the commentary to § 13A-11-8, that section "is intended to cover any unconsented-to physical touching that does not physically injure, provided it is intentionally done to harass, annoy or alarm another person."
"Although penal statutes are to be strictly construed, courts are not required to abandon common sense. United States v.Green, 446 F.2d 1169, 1173 (5th Cir. 1971). Absent any indication to the contrary, the words must be given their *Page 693 
ordinary and normal meaning. Day v. State, 378 So.2d 1156, 1158
(Ala.Cr.App.), reversed on other grounds, 378 So.2d 1159 (Ala. 1979)." Walker v. State, 428 So.2d 139, 141 (Ala.Cr.App. 1982). A commonsense interpretation of the statute reveals that it is not unconstitutionally vague and that it adequately apprises the public of what conduct is prohibited. Cf. McCorkle, supra (Mayhem statute unconstitutionally vague for failure to define "legal duty"); State v. Ballard, 341 So.2d 957, 960
(Ala.Cr.App. 1976), cert. quashed, 341 So.2d 962 (Ala. 1977) (In Child Abuse Act the phrase "`unjustifiable physical pain or mental suffering . . . in a manner which is not ordinary and reasonable discipline and punishment,' leaves so many variables that an accused would be at a loss to know precisely what he is charged with.").
 II
On December 27, 1983, deputies of the Houston County Sheriff's Office executed a search warrant in Columbia at the defendant's house trailer. The warrant was directed against the defendant's two teenage sons. Stolen weapons and marijuana were found in the trailer. The harassment charge arises from the defendant's conduct towards Deputy Leroy Wood. Wood testified that the defendant came to the trailer as they were executing the warrant and "shoved" him against the wall "just to get [him] out of the way so she could get down to the hall" to the kitchen where one of the defendant's sons was handcuffed. Deputy Wood testified that the defendant "was hollering and screaming — you know — wanted to know who we were and what we were doing there." The defendant also "verbally abused" the deputies and shoved Deputy Edward York and tried to pull him away from her son.
Immediately prior to trial, defense counsel filed a motion in limine seeking "an order prohibiting the use, mention of or questioning about any criminal acts of third persons who occupied the dwelling of the Defendant." The trial court granted this motion "to the extent of ordering the State not to bring up any testimony concerning what was found pursuant to the search warrant." The defendant contends that the trial court should have granted the motion in limine "in full".
Rule 16.6 (e), A.R.Crim.P.Temp., provides:
 "The court for good cause shown may order that any party, witness, or attorney refrain from asking certain questions, giving certain answers, or in any manner directly or indirectly referring to or alluding to any otherwise inadmissible fact, matter, or circumstance during the course of trial or in the presence of jurors or the venire."
During the trial, the trial judge stated his reasons for granting the defendant's motion: "I think that since somebody was charged with the property that was found, and she was not, I don't think that should come up in an harassment case. I believe it would be highly prejudicial. That is irrelevant."
The commentary to § 13A-11-8 defining harassment provides: "Section 13A-11-8 is intended to cover any unconsented-to physical touching that does not physically injure, provided it is intentionally done to harass, annoy or alarm another person. Thus, the section supplements the provisions on assaults." In prosecutions for assault, the State may introduce evidence which sheds light on the accused's intentions or motives for committing the offense. Bryant v. State, 49 Ala. App. 359, 371,272 So.2d 286 (1972), cert. denied, 289 Ala. 740,272 So.2d 297, cert. denied, 412 U.S. 922, 93 S.Ct. 2744, 37 L.Ed.2d 149
(1973). "On the issue of whether a person did a specified act, or whether a specified act assumed as having been done by him was done intentionally or accidentally, evidence of a motive in him to do or not to do such act is admissible." C. Gamble,McElroy's Alabama Evidence § 45.01 (1) (3d ed. 1977). This was the basis for the State's argument for the admissibility of the results of the search: "MR. ANDERSON [Prosecutor]: I think that could be the motive for the harassment, and Mr. Ward [defense counsel] talked about intent during his opening statement — we have to *Page 694 
show some kind of intent. I think that was her motive, and she knew what was in that trailer, and she didn't want the police officers to search it."
Even if the evidence of the contraband discovered by the search were abstractly and theoretically admissible, the trial court acted properly in excluding that evidence. "[T]he trial court may exclude evidence, even though it is relevant, when it would serve comparatively little or no purpose except to arouse passion, prejudice or sympathy of the jury." Valley Min. Corp.,Inc. v. Metro Bank, 383 So.2d 158, 162 (Ala. 1980). "[W]hether evidence should be excluded because it is unduly prejudicial is largely within the discretion of the trial court." Valley Min., supra; McElroy § 21.01 (4). See also Wilson v. State,22 Ala. App. 554, 555, 117 So. 615 (1928).
The record shows no abuse of discretion by the trial court. The State was entitled to show why and for what purpose the officers were at the trailer. The defendant has no cause to complain about the trial court's failure to grant the motion in limine "in full".
 III
In his brief (p. 4), the defendant argues that the "key issue" on appeal involves the prosecutor's conduct in attempting, either intentionally or inadvertently, to violate the judge's order granting the motion in limine and preventing the State from adducing any testimony concerning what was found pursuant to the search warrant.
The defendant lists 14 instances wherein the prosecutor allegedly violated the court's order. In one instance defense counsel made no objection. Another instance merely involved an in-chambers discussion of the judge's ruling. In seven cases the trial court sustained defense counsel's objection and in five of those cases he instructed the jury to disregard. The trial court overruled defense counsel's objections in only five cases. We find no reversible error in any of those rulings.
"Either knowing or unwitting attempts by the prosecutor to do indirectly what the trial judge has explicitly prohibited him from doing have no place in a criminal trial." Smith v. State,393 So.2d 529, 532 (Ala.Cr.App. 1981). A prosecutor's "endeavor to inject into a case matters wholly illegal and inadmissible, in order to fasten a conviction upon a person charged and on trial for a criminal offense, should not be indulged and cannot be approved or condoned." Whitfield v. State, 21 Ala. App. 490,491, 109 So. 524 (1926).
 "[T]he persistent asking of such illegal questions constitutes insinuations prejudicial to defendant, which the court ought not and will not countenance. In this connection we adopt as our own the following from People v. Grider, 13 Cal.App. 703, 110 P. 586, 590 [(1910)]: `Where, an improper question is asked of a witness by a district attorney, the test whether it is misconduct is found in answer to the question: "What was the purpose of counsel in asking the question?" If it was to take an unfair advantage of the defendant by intimating to the jury something that was either not true or not capable of being proven in the manner attempted, then it is error. And, if the district attorney knows when he asks the question that an objection to the question should or will be sustained, the error is not corrected because the objection is sustained. Where the prosecuting attorney asks a defendant questions which he knows to be wholly wrong, and where the questions are asked without expectation of answers, or where they are asked and withdrawn upon objection, and the clear purpose is to prejudice the jury against the defendant in a vital matter, by the mere asking of the questions, then a judgment against the defendant will be reversed, although objections to the questions were sustained, unless it appears that the questions could not have influenced the verdict.'
 "To the same effect are the decisions of this court and of the Supreme Court. *Page 695 Windom v. State, 18 Ala. App. 430, 93 So. 79 [(1922)]; Ex parte Windom, 208 Ala. 701, 93 So. 924 [(1922)]; Williams v. State, [26 Ala. App.] 53, 152 So. 264
[(1934)]; Bozeman v. State, 25 Ala. App. 281, 145 So. 165 [(1932)]." Dredd v. State, 26 Ala. App. 594, 595, 164 So. 309 (1935).
See also Annot., 109 A.L.R. 1089 (1937); 75 Am.Jur.2d Trial §§ 194, 195 (1974).
However, even a prosecutor's repeated references to evidence ruled inadmissible may not constitute reversible error if the trial court takes sufficient curative action. Thomas v. State,432 So.2d 15, 17 (Ala.Cr.App. 1983); Trent v. State,380 So.2d 960, 964 (Ala.Cr.App. 1979), cert. quashed, Ex parte Trent,380 So.2d 966 (Ala. 1980). "`Generally, timely corrective action by the [trial] court . . . is sufficient to cure the error resulting from improper conduct or remarks of counsel, unless such conduct or remarks are so prejudicial that they are obviously not cured, or unless the court's action is insufficient for such purpose'" Orr v. State, 40 Ala. App. 45,50, 111 So.2d 627 (1958), affirmed, 269 Ala. 176, 111 So.2d 639
(1959).
Although the trial court may have been lenient in dealing with the prosecutor's conduct, Ex parte Farley, 406 So.2d 1050
(Ala. 1981), we find no error in the record. In determining whether an accused was prejudiced by prosecutorial misconduct, this court "must ordinarily give great deference to the [trial] judge's handling of the alleged misconduct." Wysinger v. State,448 So.2d 435, 439 (Ala.Cr.App. 1983).
Even if we were to find that the trial judge erred in overruling one of defense counsel's objections or that his instructions were not sufficient to cure any improper and prejudicial insinuation or question of the prosecutor, we still would not reverse the defendant's conviction. Here, any possible prejudice to the defendant was rendered harmless when the defendant testified on direct examination that the deputy "said he was there to search for drugs." "A defendant cannot complain of the admission of improper evidence when he himself has testified to the same facts." Lewis v. State ex rel. Evans,387 So.2d 795, 807 (Ala. 1980); Yelton v. State, 294 Ala. 340,342, 317 So.2d 331 (1974).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.