TYSON, Judge.
Charles Eugene Cordar was indicted for rape in the first degree in violation of § 13A-6-61, Code of Alabama 1975. The jury found the appellant “guilty as charged in the indictment.” The trial judge then sentenced the appellant to life imprisonment in the State penitentiary as a habitual felony offender.
On the evening of November 1, 1986, the prosecutrix visited with her sister and the appellant, her brother-in-law, at their trailer located near Trafford, Alabama. Their trailer is situated in the same trailer park as the appellant’s father’s trailer and also the prosecutrix’s parents’ trailer. The prosecutrix lived with her parents.
The prosecutrix testified while at the appellant’s trailer that the appellant asked the prosecutrix to accompany him to his father’s trailer. The prosecutrix did not want to go, but her sister insisted. At the back door of the appellant’s father’s trailer the appellant asked to kiss the prosecutrix, but she refused. The appellant jerked her chin and kissed her. The prosecutrix then pushed the appellant away and “told him no.” (R. 34)
The prosecutrix then testified the appellant picked her up and carried her into the woods behind his father’s trailer. The prosecutrix told the appellant she wanted to go back to her sister’s (his wife) trailer. The appellant proceeded to remove the prosecutrix’s pants and underwear. The prosecutrix told the appellant she did not want to have sexual intercourse with him. The appellant then forced her to have sexual intercourse with him against her will. During the course of these events the appellant removed a sanitary napkin from the prosecutrix and threw it into the woods. When the appellant heard his wife calling for him at the front of his father’s trailer, he left the prosecutrix to go talk to his wife.
It should be noted there was some discrepancy in the prosecutrix’s testimony as to why she could not scream when the appellant carried her into the woods. She testified the appellant had his hand over her mouth. But then when asked later how this was done while he was carrying her, she stated that she could not scream because the appellant was kissing her. The prosecutrix only shrugged her shoulder when asked why she did not scream when the appellant laid her on the ground.
Also important to this point is the fact that the prosecutrix is mentally slow. The prosecutrix testified she attended special classes in school. The nurse who examined her at the hospital testified she could tell the prosecutrix was “mentally retarded” and her answers to questions were “child like.” (R. 92). The prosecutrix’s mother testified the prosecutrix attended special classes at school. Also at one point, when the State was questioning a neighbor about whether the prosecutrix was slow, the trial judge stated, “Obviously she is. I don’t know why you are going into it. We have all observed it.” (R. 219).
After the appellant went to see his wife, the prosecutrix began putting her clothes back on but could not find her shoe because it was dark. The appellant, after obtaining a flashlight, came back and helped the prosecutrix find her shoe. The prosecutrix was told by the appellant to tell no one what had happened.
Later the prosecutrix, the appellant and his wife returned to the appellant’s trailer. After staying a brief time, the prosecutrix went to another trailer in the trailer park. The appellant’s wife, the prosecutrix’s sister, came over to check on her. There the prosecutrix told her sister that the appellant had raped her.
The prosecutrix then returned to her parents’ trailer. The prosecutrix stated she began screaming because the appellant was coming after her with a steel pole and calling her names. The prosecutrix’s father asked her what had happened. She told her father that “Charles raped me.” (R. 57). Upon seeing the prosecutrix’s father, the appellant left.
The police were called. The prosecutrix was taken to Cooper Green Hospital where *1243 she was examined by a registered nurse, Sandra Patterson. Patterson testified that there were no external signs of trauma either in the pelvic areas or the rest of the prosecutrix’s body. Patterson took several samples from the prosecutrix in the preparation of the rape kit which was later sent to Larry Hays, a forensic serologist with the Alabama Department of Forensic Sciences, for analysis.
Ted Williams, the evidence technician for the Jefferson County Sheriff’s Department, went to the scene of the crime. While there Williams photographed and collected a sanitary napkin. Williams delivered this to Larry Hays.
Larry Hays testified he examined the swabs from the prosecutrix’s rape kit and also her panties and blue jeans. Semen was found present on the swabs, panties and blue jeans. Hays stated that the appellant could have been the source of the semen. There was no evidence of semen on the clothing of the appellant.
Hays also testified that he did not examine the stain on the sanitary napkin because it had been wet for three days when it arrived and was not suitable for analysis due to the deterioration.
Stephen Drexler, a crime laboratory analyst for the Alabama Department of Forensic Sciences, then testified he examined the hairs found on the sanitary napkin and found they matched the “head hairs” taken from the appellant.
Other witnesses presented by the State testified concerning the chain of physical evidence. This testimony is not relevant to issues presented on appeal.
The appellant’s wife testified she walked down to the appellant’s father’s trailer with the appellant and prosecutrix. His wife stated they all went into the appellant’s father’s trailer and stayed about 30 minutes. Then she, the appellant, and prosecu-trix went back to her own and the appellant’s trailer. She stated that the appellant and the prosecutrix did not leave the trailer during the 30 minute visit.
Christine Thrift, who lived next to the appellant’s father, testified she saw the appellant, his wife, and the prosecutrix walk up to the appellant’s father’s trailer. Then, about 25 minutes later she saw the same three people leaving the appellant’s father’s trailer.
The defense also called another witness whose testimony is not relevant to the issues presented on appeal. The appellant did not testify.
I
The appellant contends the trial court erred in not granting the appellant’s motion in limine to suppress evidence of a sanitary napkin found at the scene of the crime.
The appellant argues that the picture of a sanitary napkin and evidence of “head hairs” acquired from the sanitary napkin should be excluded because its probative value was substantially outweighed by its shocking and prejudicial effect upon the jury.
In appellant’s brief he cites a case which states: “The trial court may exclude evidence, even though it is relevant, when it would serve comparatively little or no purpose except to arouse passion, prejudice or sympathy of the jury.” Crook v. State, 469 So.2d 690, 694 (Ala.Crim.App.) cert. denied, 469 So.2d 690 (Ala.1985).
In this cause it was shown that the sanitary napkin was found at the scene of the crime, it contained hairs which matched hairs from the appellant’s head, and the prosecutrix testified the appellant removed it and threw it into the woods. This evidence was relevant and material to the issues involved.
The other cases relied upon by the appellant, on this point, concern the offering into evidence of separate crimes of these defendants. The cause at bar is distinguishable because here it did not involve the offering of evidence of a separate crime and there was a positive connection between the evidence offered and the sanitary napkin.
*1244 Important to note also is the rule of evidence that, even though it is emotionally-stirring, such has been held admissible in a rape case including: “blood-stained, torn or disheveled clothing of a rape victim worn at the time of the offense” and “a photograph revealing the condition of a rape victim, taken after the rape ... despite the fact that it was unsightly ...” C. Gamble, McElroy’s Alabama Evidence § 207.01(3) (3d ed. 1977).
In our cause the pictures of the sanitary napkin and evidence of the appellant’s “head hairs” being found on the sanitary napkin would not be so shocking as to outweigh its probative value.
It is well established through case law on determining the admissibility of evidence that the trial judge is afforded broad discretion and absent abuse such discretion will not be disturbed. Mitchell v. State, 473 So.2d 591 (Ala.Crim.App.), cert. denied, 473 So.2d 591 (Ala.1985); Ballard v. State, 461 So.2d 899 (Ala.Crim.App.); cert. denied, 461 So.2d 899 (Ala.1984); Ward v. State, 440 So.2d 1227 (Ala.Crim.App.1983); Wicker v. State, 433 So.2d 1190 (Ala.Crim.App.1983).
The trial court did not err in refusing to suppress the evidence of the sanitary napkin. Harris v. State, 333 So.2d 871 (Ala.Crim.App.1976).
II
The appellant also contends the trial court erred in not granting the appellant’s motion for judgment of acquittal.
The relevant part of § 13A-6-61, Code of Alabama 1975 is as follows:
“(a) A male commits the crime of rape in the first degree if:
“(1) He engages in sexual intercourse with a female by forcible compulsion; . . ."
The appellant limits his argument to the sufficiency of the evidence needed to show forcible compulsion to sustain a conviction of first degree rape. Forcible compulsion is defined in § 13A-6-60(8), Code of Alabama 1975 as follows:
“Physical force that overcomes earnest resistance or a threat, express or implied, that places a person in fear of immediate death or serious physical injury to himself or another person.”
The appellant argues that the evidence does not establish that the prosecutrix used earnest resistance to overcome any physical force allegedly used by the appellant. This court in Richards v. State, 475 So.2d 893, 895 (Ala.Crim.App.) cert. denied, 475 So.2d 893 (Ala.1985) (quoting State v. Jones, 62 Haw. 572, 617 P.2d 1214, 1217 (1980)) defined earnest resistance as:
“Earnest resistance, however, is a relative term and whether or not the statutory requirement was satisfied must be measured by the circumstances surrounding the alleged assault. Among the factors to be considered are the relative strength of the parties, the age of the female, her physical and mental condition, and the nature and degree of the force used by the assailant. Resistance may appear to be useless, and may eventually prove to be unavailing, but there must have been a genuine physical effort on the part of the complainant to discourage and to prevent her assailant from accomplishing his intended purpose.” (emphasis added)
The prosecutrix testified she told the appellant she did not want to kiss him, but he jerked her chin and kissed her. The appellant then picked up the prosecutrix and carried her into the woods. While the appellant undressed the prosecutrix, the pros-ecutrix told the appellant she did not want to have sexual intercourse with him. There was some question as to why the prosecutrix did not scream for help.
However, the above evidence along with the prosecutrix being mentally slow was sufficient for the judge to allow this to go to the jury, who determined the appellant exercised physical force which overcame the prosecutrix’s earnest resistance.
As stated in Sullivan v. State, 441 So.2d 130, 135 (Ala.Crim.App.1983):
*1245 “When a motion for a judgment of acquittal before submission of cause to a jury is made on the grounds that the state has failed to make out a prima facie case because the evidence is insufficient to support a finding of guilty beyond a reasonable doubt, it is the duty of the trial court to determine the sufficiency of the evidence to sustain a conviction under the indictment. In determining if the evidence of the state is sufficient to sustain a verdict, the trial court should consider only the evidence before the jury of the facts at the time the motion was made, and must consider it most favorably to the state. When there is legal evidence from which the jury could, by fair inference, find the defendant guilty, the trial court should submit the case for the jury to determine the weight it will give the evidence. This Court should not disturb the jury’s decision.”
See also Parrish v. State, 494 So.2d 705 (Ala.Crim.App.1985), cert. denied 494 So.2d 705 (Ala.1986); Harris v. State, 333 So.2d 871 (Ala.Crim.App.1976). Using this standard of review the evidence before the trial court judge was sufficient at the time of the appellant’s motion for the judge to deny the motion for judgment of acquittal. Harris v. State, 333 So.2d 871 (Ala.Crim.App.1976).
Ill
The appellant’s last contention is that the trial court erred in refusing to give the appellant’s requested jury charge on the lesser included offense of sexual misconduct.
The pertinent part of § 13A-6-65, Code of Alabama 1975, is as follows:
“(a) A person commits the crime of sexual misconduct if:
“(1) Being a male, he engages in sexual intercourse with a female without her consent, under circumstances other than those covered by sections 13A-6-61 and 13A-6-62; or with her consent where consent was obtained by the use of any fraud or artifice;”
The purpose of this statute as stated in the commentary to § 13A-6-65, Code of Alabama 1975 is this statute “is directed toward the more unusual situations where a person has acquiesced to sexual intercourse or deviate sexual intercourse as a result of some fraud, artifice or strateg-em.”
There was no evidence to support that in the cause at bar. The evidence in this cause did not show the appellant engaged in intercourse with the victim under circumstances other than those covered in § 13A-6-61 (first degree rape), Code of Alabama 1975.
Myers v. State, 401 So.2d 288 (Ala.Crim.App.1981) dealt with the issue of whether the trial court properly refused to instruct the jury on sexual abuse in the first degree where the defendant was convicted of rape. This court in that case held:
“The trial court is not required to charge the jury on a lesser included offense when the evidence offered at trial points either to the guilt of the accused of the offense charged in the indictment or to his innocence. An accused is entitled to have the jury charged on a lesser included offense only where there is a reasonable theory from the evidence to support the lesser offense.” Id. at 291.
See also Alldredge v. State, 453 So.2d 1332 (Ala.Crim.App.) cert. denied, 453 So.2d 1332 (Ala.1984); Jackson v. State, 375 So.2d 1271 (Ala.Crim.App.), cert. denied, 375 So.2d 1274 (Ala.1979).
There was testimony in the cause at bar that the appellant and the prosecutrix were with the appellant’s wife so the alleged offense could not have even occurred.
This was a matter for the defense of the appellant. The appellant’s attorney argued such evidence when he stated to the trial judge: “There has also been testimony on the stand that at the time she, [the prosecu-trix], alleged she had sexual intercourse with Charles Cordar, [the appellant], that Charles Cordar was with his wife and her and that it did not happen.” (R. 212)
*1246 There was evidence offered in this cause that the appellant was innocent and also evidence that the appellant was guilty of the offense charged in the indictment. There was no evidence to support that the act in question was an unusual situation, so that the accused was entitled to the jury charge on the offense of sexual misconduct.
Therefore, the trial court properly refused to give the appellant’s requested charge.
For the reasons stated above, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.